# EXHIBIT 9

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 2 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 2 of 35   PageID 322
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 1 of 34

Docket #1955  Date Filed: 02/28/2021

MUNSCH HARDT KOPF & HARR, P.C.
Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

Counsel for Highland Capital Management Fund
Advisors, L.P. and NexPoint Advisors, L.P.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF
## THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE STACEY G.C. JERNIGAN, U.S. BANKRUPTCY JUDGE:

COME NOW Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (the "Movants"), creditors and parties-in-interest in the above styled and numbered bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P. (the "Debtor"), and file this their *Emergency Motion for Stay Pending Appeal of the Confirmatio Order, and Brief In Support Thereof* (the "Motion"), respectfully stating as follows:

### I.     SUMMARY

1.     The Movants respectfully request a stay of the Confirmation Order pending appeal in order to protect their appellate rights and ensure that, if they are successful on their

1934054210228000000000001
Appx. 0273

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 3 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 3 of 35    PageID 323
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 2 of 34

appeal of the Confirmation Order, their rights will not be mooted by that time.  Not only is there the threat of equitable mootness, but there is also a more immediate threat that, if the Movants cannot exercise their legitimate rights and fulfil their fiduciary obligations to the funds due to the Plan's gatekeeper injunction, those rights will effectively be vitiated by the time of any final resolution of the appeal.  A stay pending appeal would not harm the Debtor or the creditors because the Plan does not give the Debtor any tools or ability to manage its assets any more or better than it has at present; the Debtor will continue doing what it is doing today, albeit through a different corporate form, but will not receive any new money, exit financing, or other assets under the Plan.  Thus, while the absence of a stay pending appeal may well irreparably harm the legitimate interests of the Movants, no legitimate interest of the Debtor will be implicated or harmed.

2.      The Movants submit that they have a likelihood of success on the merits of their appeal.  The issues being appealed with respect to: (i) the Absolute Priority Rule; (ii) satisfaction of section 1129(a)(2) of the Bankruptcy Code; and (iii) the confirmed plan's exculpation and injunction provisions are all legal issues reviewed *de novo*.  While the Court has overruled the Movants' objections to the Plan on these bases, an objective analysis of these issues demonstrates that they are subject to material dispute and that the Movants have a reasonable likelihood of success on the merits.  The public interest supports a stay because the Advisors, those whose money the Debtor manages, and the public at large all have a strong interest in ensuring that the Debtor complies with its contractual, fiduciary, and statutory obligations to its investors.  And, because the Plan does not afford the Debtor any tools to manage its business and monetize its assets, any bond for the stay pending appeal should not be punitive but should instead compensate for the time value of money at the federal postjudgment interest rate.

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 4 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 4 of 35 PageID 324
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 3 of 34

## II.    BACKGROUND

3.     On February 22, 2021, the Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [docket no. 1943] (the "Confirmation Order").

4.     By the Confirmation Order, and over the Movants' objections, the Court confirmed the *Debtor's Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [docket no. 1808], as further modified (the "Plan").

5.     The Movants, although controlled by James Dondero, advise and manage various funds and investment vehicles including, of relevance to this Bankruptcy Case, various publicly traded retail funds. The Movants are registered as investment advisors under the Investment Advisors Act of 1940. The Movants have fiduciary duties to the funds and other investment vehicles they advise and manage.

6.     Three of these retail funds managed by the Advisors are Highland Income Fund, NexPoint Strategic Opportunities Fund, and NexPoint Capital, Inc. In turn, these funds have invested approximately $140 million in various collateralized loan obligations ("CLOs") managed by the Debtor pursuant to portfolio management agreements (the "Portfolio Management Agreements"). Under most of the Portfolio Management Agreements, defined "cause" is required to remove the Debtor as manager of the CLOs, but in a handful such removal is possible without cause.

7.      Under at least three of the Portfolio Management Agreements, these funds have the right to remove the Debtor as the manager of the CLOs, because these funds hold the requisite percentage of shares under the agreements to remove the CLO manager. There are various other CLOs where the funds do not hold the requisite percentage of shares to remove the Debtor as manager unilaterally, but are able to vote their shares to remove the Debtor as

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 5 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 5 of 35   PageID 325
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 4 of 34

manager if other preference shareholders join in such removal and, collectively, the contractual threshold of voting preference shares for removal is met.

8.    As the Advisors have informed the Court (and as the funds have also informed the Court), they do not believe that the Debtor is properly managing more than $1 billion invested in the CLOs because the Debtor, in contravention of the Advisors' and funds' stated objectives otherwise, has been liquidating the CLOs even though they do not need liquidity, and will liquidate the CLOs in approximately 18 to 24 months.  The Advisors recognize that the Court did not agree with these concerns.  Nevertheless, the Advisors submit that these are legitimate concerns motivated by business interests and not by any desire to harm the Debtor.

9.    The Plan contains various exculpation, release, and injunction provisions that are of particular concern to the Advisors.  Article IX of the Plan contains the following exculpation provision (the "Exculpation Provision"):

**C.    Exculpation**

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 6 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 6 of 35   PageID 326
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 5 of 34

releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Plan at 54-55.  "Exculpated Parties," in turn, means, collectively:

> (i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

Plan at 15.

10.     Article IX of the Plan also contains an injunction provision (the "Injunction"), which provides, in pertinent part, as follows:

**F.     Injunction**

> Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.
>
> . . . .
>
> Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct,

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 7 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 7 of 35 PageID 327
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 6 of 34

fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

Plan at 57-58. "Enjoined Parties," in turn, is defined to mean:

(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Entity appeared and any other party in interest, (iv) any Related Entity, and (v) the Related Persons of each of the foregoing.

Plan at 14. "Protected Parties" means, collectively:

(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the members of the Committee (in their official capacities), (viii) the Claimant Trust, (ix) the Claimant Trustee, (x) the Litigation Sub-Trust, (xi) the Litigation Trustee, (xii) the members of the Claimant Trust Oversight Committee (in their official capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related Persons of each of the parties listed in (iv) through (xv); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), NexBank, SSB (and any of its subsidiaries), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Protected Party."

Plan at 19.

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 8 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 8 of 35   PageID 328
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 7 of 34

11.     The Advisors are subject to the Injunction.   The Injunction prohibits the Advisors from taking any action to "interfere with the implementation or consummation of the Plan."   As the evidence at the confirmation hearing made clear, the Debtor considers this injunction to prohibit the Advisors from advising the funds or others to cause the removal of the Debtor as the manager of the CLOs.   As also made clear at the confirmation hearing, the Injunction applies to the Debtor's postconfirmation operations, including its management of the CLOs.   Thus, the Plan prohibits the Advisors from fully exercising their fiduciary duties to the funds.

### III.     ARGUMENTS AND AUTHORITIES

#### A.     STANDARD FOR A STAY PENDING APPEAL

12.     Bankruptcy Rule 8007 allows a bankruptcy court, in the first instance, to stay a judgment in order to maintain the status quo pending appeal.   FED. R. BANKR. P. 8007(a)(1)(A).   In determining whether to grant a discretionary stay pending appeal under Bankruptcy Rule 8007, courts consider the following criteria:

(1) the likelihood that the movant will prevail on the merits of the appeal;

(2) whether the movant will suffer irreparable injury if the stay is denied;

(3) whether other parties would suffer substantial harmed if the stay is granted; and

(4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *In re Texas Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002).   The first two elements are the most critical.   *Saldana v. Saldana*, 2015 WL 502145, at *2 (N.D. Tex. Aug. 25, 2015).

13.     The fundamental purpose of a stay pending appeal, especially with respect to an order of an Article I court, is aptly summarized as follows:

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 9 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 9 of 35   PageID 329
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 8 of 34

> The application for a stay of an order confirming a chapter 11 reorganization plan in a highly litigated and complex bankruptcy proceeding presents a classic clash of competing interests, all of which have merit. Without a stay, it is extremely unlikely that Appellants will ever be able to have meaningful appellate review of the rulings of the Bankruptcy Court, a non-Article III court, and in any event, a lower court. The ability to review decisions of the lower courts is the guarantee of accountability in our judicial system. In other words, no single judge or court can violate the Constitution and laws of the United States, or the rules that govern court proceedings, with impunity, because nearly all decisions are subject to appellate review. At the end of the appellate process, all parties and the public accept the decision of the courts because we, as a nation, are governed by the rule of law. Thus, the ability to appeal a lower court ruling is a substantial and important right.

*In re Adelphia Commc'ns. Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007).

**B.**    <u>THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS</u>

    **i.**    **Legal Standard.**

14.    With respect to the first factor, the likelihood of success on the merits of the appeal, this Court has summarized as follows:

> With respect to the first element, the Fifth Circuit has explained that the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay. When the issue appealed is mostly a factual question over which the bankruptcy court has broad discretion, such discretion is unlikely to be overturned on appeal. Thus, with respect to questions of fact, the movant usually fails to satisfy the first element. With respect to questions of law, however, especially questions involving the application of law, or when the law has not been definitively addressed by a higher court, the movant more easily satisfies the first element.

*In re Tex. Equip. Co.*, 283 B.R. at 227 (internal citations and quotations omitted); *accord In re First S. Sav. Assoc.*, 820 F.2d at 704 ("the movant need only present a substantial case on the merits when a serious legal question is involved").

15.    When considering the confirmation of a chapter 11 plan on appeal, the Court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *See In re Tex. Grand Prairie Hotel Realty LLC*, 710 F.3d 324, 326 n. 1 (5th Cir. 2013).

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 10 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 10 of 35 PageID 330
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 9 of 34

Here, the Movants challenge the Court's ruling on issues of law: the Absolute Priority Rule, section 1129(a)(2) of the Bankruptcy Code, and the Plan's exculpation and injunction provisions. As these are issues of law, the standard of review will be *de novo*, and as such, "the movant more easily satisfies the first element." *In re Tex. Equip. Co.*, 283 B.R. at 227.

### ii. Absolute Priority Rule.

16. Class 8, a class of unsecured creditors, rejected the plan.[1] That means that the Plan could have only been confirmed under the cramdown provisions of section 1129(b) of the Bankruptcy Code. *See* 11 U.S.C. §§ 1129(b)(1); 1129(a)(8). This means that, in order to be confirmed, the Plan must "not discriminate unfairly" and that it must be "fair and equitable" with respect to Class 8. Because Class 8 consists of unsecured creditors, in order to be "fair and equitable":

> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B).

17. The Plan estimates a recovery to Class 8 creditors of 71% over time. *See* Confirmation Order at p. 41. While the Debtor testified that there may be a higher return based on causes of action, the Debtor did not value those causes of action or offer any evidence that Class 8 would be paid in full. As such, subsection (i) above does not apply because Class 8 will not be paid in full. That means that the only way the Plan could be confirmed is under subsection (ii), also known as the Absolutely Priority Rule. This Rule is

---

[1] The Movants do not hold Class 8 claims. Nevertheless, as the Plan alters their legal rights, they have standing to object to any portion of the Plan that may prevent the Plan from being confirmed.

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 11 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 11 of 35   PageID 331
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 10 of 34

simple: if the Class rejects the Plan and is not paid in full under the Plan, then the holder of any junior interest; *i.e.* equity interest, cannot "receive or retain . . . any property" on account of its junior interest.

18.     Here, the Plan violates the Absolute Priority Rule as a matter of law, and the Movants respectfully submit that Court erred as a matter of law in concluding otherwise. This is because the Plan gives the holders of limited partnership interests in the Debtor contingent interests in the Claimant Trust. *See* Plan at p. 45. There can be no question that the contingent trust interests the Plan gives to holders of equity interests is "property" within the meaning of the Absolute Priority Rule. The Debtor admitted this during closing arguments: "These are contingent interests. They are property. No doubt they are property." Confirmation Hearing Transcript at 242:19-20. The Debtor's Chief Executive Officer and Chief Restructuring Officer, who prepared and authorized the Plan for the Debtor, testified that the contingent interests are, in his belief, inchoate property interests. *See id.* at 177:10-178:21. Moreover, that witness confirmed that these contingent interests may have some value in the future. *See id.* at 178:22-25. As a matter of law, an interest in a trust, even if a contingent one subject to a contingency that may never happen, is "property." *See In re Edmonds*, 273 B.R. 527, 529 (Bankr. E.D. Mich. 2000) ("[t]he question should not be whether a future interest is vested or contingent. Clearly a contingent future interest is a legally cognizable interest, and thus property of the estate").

19.     That is the beginning and end of the inquiry: the Absolute Priority Rule prohibits equity from receiving or retaining any "property" under the Plan, and that is precisely what they are receiving under the Plan. It does not matter that that property is subject to a contingency that is only triggered if and when unsecured creditors are paid in full,

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 10

Appx. 0282

Case 22-03062-sgj Doc 10-9 Filed 06/10/22  Entered 06/10/22 17:15:23  Page 12 of 35
Case 3:21-cv-01169-N  Document 10-9  Filed 10/05/21  Page 12 of 35  PageID 332
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21  Entered 02/28/21 09:49:28  Page 11 of 34

or that the property has little to no value, or that the contingency may never occur: "property"

is being received under the Plan.

20.     The Debtor argued, and the Court agreed, that these contingent interests may

have no value and would only vest and be paid if unsecured creditors are paid in full, thus

preserving the priority scheme of the Bankruptcy Code.  As for the argument regarding value,

the United States Supreme Court has squarely rejected any such argument:

> Respondents further argue that the absolute priority rule has no application in
> this case, where the property which the junior interest holders wish to retain
> has no value to the senior unsecured creditors.  In such a case, respondents
> argue, the creditors are deprived of nothing if such a so-called interest
> continues in the possession of the reorganized debtor.  Here, respondents
> contend, because the farm has no 'going concern' value (apart from their own
> labor on it), any equity interest they retain in a reorganization of the farm is
> worthless and therefore is not 'property' under 11 U. S. C. § 1129(b)(2)(B)(ii).
>
> We join with the overwhelming consensus of authority which has rejected this
> 'no value' theory. . .  Whether the value is present or prospective, for dividends
> or only for purposes of control a retained equity interest is a property interest. .
> .  And while the Code itself does not define what 'property' means as the term
> is used in § 1129(b), the relevant legislative history suggests that Congress'
> meaning was quite broad.  Property includes both tangible and intangible
> property.

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (1988) (internal quotations and

citations omitted).  Thus, it does not matter that the "property" may be prospective, or that it

may be intangible, or that it may have no value.  All that matters is that "property," which is

intended to be read broadly, is retained or received under the Plan.  There can be no question

that it is.

21.     The Debtor and the Court also relied on *In re Introgen Therapeutics*, 429 B.R.

570 (Bankr. W.D. Tex. 2010) for the proposition that, so long as the contingent interests are

not paid unless and until all unsecured claims are paid in full, the Absolute Priority Rule is not

violated and is, in fact, preserved.  As is the case here, the plan in *Introgen* provided that

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 11

Appx. 0283

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 13 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 13 of 35    PageID 333
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 12 of 34

equity interests, which were retained, would only be paid if and when unsecured creditors were paid in full:

> The right to receive something imaginary is not property.  The only way Class 4 will receive anything is if Class 3 in fact gets paid in full, in satisfaction of § 1129(b)(2)(B)(i), meaning the absolute priority rule would not be an issue.  If Class 3 is not paid in full, Class 4's 'property interest' is not just valueless, as Creditors argue, it simply does not exist.

*Id.*

22.     This opinion is wrongly decided.  First, it directly contradicts the language of the Bankruptcy Code, which implicates the Absolute Priority if *any* "property" is being retained or received.  Second, this opinion looked to the present value of what was being retained, something directly foreclosed by the Supreme Court's opinion in *Norwest Bank Worthington v. Ahlers* quoted above.  It cannot be doubted that a contingent, non-vested interest in a trust is "property."  It may have no present value or other benefits, and it may never have a value or any other benefits, but there is a condition precedent which, if triggered, converts it to something of value, benefit, and present interest.  Whatever it is that is converted into the "property" is itself "property."

23.     Third, this opinion fails to take into account the Supreme Court's opinion in *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*, 526 U.S. 434 (1999).  That well know opinion considered whether the Absolute Priority Rule was triggered under a plan where equity was retained.  While it may be obvious that equity is "property" and that the retention of equity therefore violated the Rule, the Supreme Court's reasoning was different.  Rather, the Supreme Court equated the exclusive opportunity to bid on new equity under a plan as itself "property" that was being granted or retained in violation of the Rule: "[t]his opportunity should, first of all, be treated as an item of property in its own right."  Id. at 455.  The Supreme Court reasoned as follows:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 12

Appx. 0284

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 14 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 14 of 35   PageID 334
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 13 of 34

> While it may be argued that the opportunity has no market value, being
> significant only to old equity holders owing to their potential tax liability, such
> an argument avails the Debtor nothing, for several reasons.  It is to avoid just
> such arguments that the law is settled that any otherwise cognizable property
> interest must be treated as sufficiently valuable to be recognized under the
> Bankruptcy Code.  Even aside from that rule, the assumption that no one but
> the Debtor's partners might pay for such an opportunity would obviously
> support no inference that it is valueless, let alone that it should not be treated as
> property.  And, finally, the source in the tax law of the opportunity's value to
> the partners implies in no way that it lacks value to others.

*Id*. at 455.  If an exclusive "opportunity" is "property" for purposes of the Absolute Priority

Rule, then the "opportunity" to perhaps share in a future recovery, however remote, is also

"property."  Even a contingent, non-vested interest is "otherwise cognizable property," since

the law recognizes such interests and even brings them into an estate as property of the estate.

24.     For similar reasons, the Plan also violates the Absolute Priority Rule because

the Debtor retains control of its property and its business after confirmation.  *See Norwest*

*Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (holding that retention of control is

"property" under the Absolute Priority Rule).  In this respect, it must be understood that the

Plan, while creating a trust for creditors and funding that trust with certain assets, also

reorganizes the Debtor and vests the Debtor's business assets in the reorganized Debtor, while

the creditor trust will own the reorganized debtor.  Before the Plan, the Debtor controlled its

property and its business.  Under the Plan, the Debtor will continue to do so, through the same

CEO/CRO, even though the Debtor will be indirectly owned by its creditors.  But it is the

retention of control that matters, not the ownership of the new equity.

25.     As summarized by one court in denying confirmation, "the power to control a

corporation, through its board of directors, that a majority shareholder has, *is a separate*

*property interest*, distinct from the value of the shares themselves."  *In re 4 C Solutions Inc.*,

302 B.R. 592, 597 (Bankr. C.D. Ill. 2003) (emphasis added).  Likewise, the U.S. Court of

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 13

Appx. 0285

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 15 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 15 of 35   PageID 335
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 14 of 34

Appeals for the Tenth Circuit has concluded that the retention of control is "property" within the meaning of the Absolute Priority Rule. *See Unruh v. Rushville State Bank*, 987 F.2d 1506, 1509 (10th Cir. 1993). Stated differently, "[i]t is the control of the reorganized entity which is a valuable asset, and that asset should not be passed on to the junior class." *In re Pecht*, 53 B.R. 768, 772 (Bankr. E.D. Va. 1985). This conclusion also applies where there is a change in ownership but control is retained. In *In re Perdido Motel Group Inc.*, 101 B.R. 289, 291-92 (Bankr. N.D. Ala. 1989), the debtor principals proposed to transfer ownership of the debtor to someone else (their parents) but with them retaining control after confirmation. Setting aside the potential of a sham transaction, the court denied confirmation because, while current equity would lose its equity, it would retain control: "by indirection, a retention of control of the debtor's property." *Id*. at 292. Indeed, the Absolute Priority Rule would lose all meaning if a debtor could create a trust, have that trust own the reorganized debtor, yet retain control of the reorganized debtor.

26.     Therefore, under the Plan, current holders of equity interests retain "property" in the form of contingent trust interests, and the Debtor retains controls on account of its current equity interests, both in violation of the Absolute Priority Rule because Class 8 has rejected the Plan and Class 8 is not paid in full under the Plan. The Movants therefore submit that they have presented "a substantial case on the merits when a serious legal question is involved." *In re Tex. Equip. Co.*, 283 B.R. at 227. Moreover, with respect to the conclusion that the Absolute Priority Rule is not violated because equity would not be paid anything unless and until all unsecured creditors are paid in full, and the holding of *In re Introgen Therapeutics* supporting that conclusion, neither the Supreme Court nor the Fifth Circuit has addressed this argument. Thus, because this issue has not been "definitively addressed by a higher court," the Movants have "more easily" satisfied this element. *See id*.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 14

Appx. 0286

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 16 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 16 of 35 PageID 336
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 15 of 34

      **iii.**      **Exculpation and Injunction Provisions.**

27.      The Movants recognize that the Court, through its oral and written findings and conclusions, carefully considered the Plan's exculpation and injunction provisions and carefully considered all objections to the same in detail, prior to approving these provisions. Respectfully, the Movants believe that the Court's findings and conclusions on these points do not comport with established Fifth Circuit precedent because, among other things: (i) these provisions apply to *business* decisions as well as to case administration, and exculpating and providing injunctions for business decisions appears unprecedented; (ii) these provisions apply to non-debtor entities, *i.e.* the Debtor's general partner and its management; and (iii) these provisions apply to *postconfirmation* matters.

28.      The Fifth Circuit has held that exculpation provisions designed to absolve parties other than the debtor and the creditors' committee of any negligent conduct that occurred during the course of the bankruptcy are unenforceable. *In re Pacific Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009). To the contrary, Fifth Circuit authorities broadly "foreclose non-consensual non-debtor releases and permanent injunctions." *Id.* at 252 (citing authorities); *see also In re Thru, Inc.*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at *22-23 (N.D. Tex. Oct. 19, 2018). Whereas exculpation of the debtor is justified by section 524 of the Bankruptcy Code, and exculpation of creditors' committees has been deemed justified by section 1103 of the Bankruptcy Code, there is no authority justifying an extension of exculpation protections to other parties, even if the parties sought to be exculpated participated significantly in formulating the confirmed plan. *In re Pacific Lumber*, 584 F.3d at 253 (noting that the creditors' committee and its members were "the only disinterested volunteers among the parties sought to be released").

29.      However, the Plan extends the Exculpation Provision to not only the Debtor,

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 15

**Appx. 0287**

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 17 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 17 of 35   PageID 337
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 16 of 34

the creditors' committee, and their professionals, but also impermissibly to the Debtor's majority-owned subsidiaries, Strand, the Independent Directors, the CEO/CRO, and other Related Persons, in contravention of established precedent. Such parties are not "disinterested volunteers" akin to the creditors' committee, and even if they were, Fifth Circuit precedent does not support their exculpation from liability. Furthermore, there is no clear end date with respect to the Exculpation Provision. The Exculpation Provision has the practical effect of allowing the Exculpated Parties to escape liability for post-confirmation conduct that goes beyond activity relating to the bankruptcy case or the administration of the estate, and allows the Exculpated Parties to escape liability that may arise in ordinary course, post-petition relationships of the parties, such as liability for an ordinary breach of contract.

30.     Indeed, the District Court, in *In re Thru, Inc.*, struck down a virtually identical exculpation clause as the one in the Plan. 2018 WL 5113124, at *22-23. The exculpation clause in that case provided as follows:

> Neither the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document. The Exculpated Persons shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

*Id.* at *22.

31.     Because the District Court has already concluded that confirmation of a plan containing a virtually identical exculpation provision constituted an error as a matter of law,

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 16

Appx. 0288

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 18 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 18 of 35 PageID 338
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 17 of 34

the Movants have demonstrated a likelihood of success on the merits of their appeal. Here, however, the exculpation provision is even broader, protecting non-debtor entities and their directors, not being limited to bankruptcy administration matters but also affecting business decisions, and not being limited in time to the pre-confirmation period.

32.      Furthermore, the sweeping Injunction preventing parties from pursuing causes of action against the non-debtor Protected Parties effectively discharges non-debtors and contravenes established Fifth Circuit precedent. The Injunction is significantly broader than injunctions that have been struck down by courts in the Fifth Circuit. In the recent case of *In re Thru, Inc.*, the District Court struck down an injunction that purported to enjoin causes of action held against the debtor or the estate and that arose prior to the effective date of the plan from being brought against certain non-debtor protected parties. 2018 WL 5113124, at *21-22. The District Court found that it was clearly erroneous for the bankruptcy court to approve the injunction under section 105 of the Bankruptcy Code. *Id.* The injunction at issue in *In re Thru* was narrower than the Injunction in the Plan in several important respects, as the Plan Injunction is not limited to claims that arose prior to the Effective Date, and is not limited to claims that the Enjoined Parties hold against the Debtor. Rather, the Injunction appears to have no end date, so long as a claim or cause of action arises out of some future administration or implementation of the Plan. Moreover, and significantly, the Injunction precludes Enjoined Parties from bringing claims held *against the Protected Parties* -- not just claims held against the Debtor or the estate.

33.      The propriety of the Injunction is not saved by the ability of an Enjoined Party to bring such claim if the Court so allows. In fact, the channeling nature of the Injunction is impermissible as well. As drafted, the Injunction is broad enough to cover claims and causes of action that arise out of postconfirmation, ordinary course transactions between the

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 17

Appx. 0289

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 19 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 19 of 35 PageID 339
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 18 of 34

reorganized debtor and parties in interest and which do not have any actual relationship to the Plan or its implementation. With result to any such disputes that arise, the Court lacks subject matter jurisdiction. *See In re CJ Holding Co.*, 597 B.R. 597, 604 (S.D. Tex. 2019) ("After confirmation, 'the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.'") (quoting *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016)). Therefore, the channeling Injunction is impermissible because the Court appears to lack jurisdiction to even consider whether an enjoined action is colorable. Parties cannot create indefinite subject matter jurisdiction where none otherwise exists.

34.     The Injunction of particular concern to the Movants. Under the Injunction, the Movants are prohibited from advising or causing their clients to exercising their contractual rights against the postconfirmation Debtor pursuant to contracts that the Debtor has assumed under the Plan. The law is clear that, upon assumption, the Debtor must comply with and be subject to all provisions of the assumed contracts. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 505-06 (5th Cir. 2000); *In re Texas Baseball Partners*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014). Here, the Plan's exculpation and injunction provisions alter this clear law by imposing a new requirement that permission from the Court must first be obtained before proceeding against the Debtor, and that, as part of that permission, any party seeking to enforce rights must demonstrate a "colorable claim." This means that this Court will of necessity be determining some aspect of the underlying dispute, even if the dispute relates solely to postconfirmation mattes over which the Court will have no jurisdiction. Moreover, if the Court finds that the action is not colorable, then an Article I court with no post-confirmation jurisdiction will have effectively decided the matter on the merits. In addition to the Court lacking jurisdiction, the Injunction also violates 28 U.S.C. § 959, the first portion of

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 18

Appx. 0290

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 20 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 20 of 35    PageID 340
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 19 of 34

which expressly provides that no leave from court is required in order to sue a debtor-in-possession based on its management of property—which would be the direct issue involved in any post-confirmation action.

35.    The Confirmation Order, by approving the Exculpation Provision and the Injunction, therefore presents a serious legal question.  At a minimum, the Movants have shown a substantial case on the merits and the balance of equities weigh heavily in favor of a stay.  *See In re First S. Savings*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999, at *3; *In re Texas Equipment Co.*, 283 B.R. at 227.  "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations."  *In re Dernick*, 2019 WL 236999, at *3; *see In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993).  Here, the Exculpation Provision and the Injunction violate established Fifth Circuit precedent and the Confirmation Order's approval of such provisions is erroneous as a matter of law.  Precedent involves significant public concerns, and the allowance of the provisions will cause lasting effects on parties in interest.  Indeed, the Injunction is so broad that it will prevent parties from enforcing their rights with respect to postconfirmation transactions unrelated to the bankruptcy case unless they first seek authority to do so from the Court.  Not only does this prevent a serious hurdle to the enforcement of rights, but it presents a serious due process concern.

### iv.    Section 1129(a)(2) of the Bankruptcy Code.

36.    In order to confirm the Plan, the Bankruptcy Code requires that the "proponent of the plan complies with the applicable provisions of this title [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  The proponent of the Plan was the Debtor.  The Debtor failed to satisfy section 1129(a)(2) of the Bankruptcy Code, and the Court erred as a matter of law in

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 19

Appx. 0291

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 21 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 21 of 35 PageID 341
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 20 of 34

concluding that it had, because the Debtor completely failed to comply with Bankruptcy Rule 2015.3—on at least three occasions.

37. Section 1129(a)(2) is a mandatory provision and if it is not satisfied, a plan cannot be confirmed as a matter of law. 11 U.S.C. § 1129(a) ("[t]he court shall confirm a plan only if all of the following requirements are met"). Section 1129(a)(2) is not limited to whether a debtor complies with section 1129 itself; that is the point of the opening clause of section 1129(a). Rather, as the House Judiciary Report confirms, this section "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure." H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 412–418.

38. The Debtor, as a debtor-in-possession, has the duties and obligations of a trustee under section 1106(a) of the Bankruptcy Code (except with respect to certain such duties not relevant here). 11 U.S.C. § 1107(a). One of those duties is to comply with subsection 8 of section 704(a) of the Bankruptcy Code." 11 U.S.C. § 1106(a)(1). That subsection provides that that trustee (here, the debtor-in-possession) shall:

> if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires.

11 U.S.C. § 704(a)(8).

39. As there is no question that the business of the Debtor was authorized to be operated, this section requires the Debtor to file periodic reports of business operations and such other information as the "United States trustee or the court requires." *Id*. Bankruptcy Rule 2015.3 provides that:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 20

Appx. 0292

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 22 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 22 of 35   PageID 342
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 21 of 34

> In a chapter 11 case, the trustee or debtor in possession shall file periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or a debtor in a case under title 11, and in which the estate holds a substantial or controlling interest. The reports shall be prepared as prescribed by the appropriate Official Form, and shall be based upon the most recent information reasonably available to the trustee or debtor in possession.

Bankruptcy Rule 2015.3(a).

40.     There is a presumption of "substantial or controlling interest" where the debtor owns or controls at least 20 percent of such entity."  Bankruptcy Rule 2015.3(c).  The first Rule 2015.3 report is due seven days before the meeting of creditors, and a subsequent report is due every six months thereafter.  Bankruptcy Rule 2015.3(b).

41.     The Debtor violated this Rule several times.  The Debtor admitted that it held interests in at least eight other companies, with respect to which the Debtor admitted that it held at least 20% of such interests in three of such companies (and did not remember the percentage of interest in the other companies.  Confirmation Hearing Transcript (February 3, 2021) at 46:15-48:8.  The Debtor admitted that these were not publicly traded entities and were not themselves debtors in bankruptcy.  *See id.* at 46:2-14.  The reason given for the Debtor for its failure to file its initial Rule 2015.3 report and each subsequent one was that, with all that was going on early in the case, "it fell through the cracks."  *See id.* at 49:17-21.  Yet, the Debtor never sought nor received any leave from the Bankruptcy Court to file its Rule 2015.3 reports late. *See id.* at 50:1-8.

42.     There is no question, therefore, that the Debtor failed to comply with Bankruptcy Rule 2015.3—indeed the Debtor admitted that fact.  The Debtor therefore failed to comply with its duties to file such reports as required by the United States Trustee and Bankruptcy Court under section 704(a)(8) of the Bankruptcy Code, as made applicable to a debtor-in-possession under sections 1106 and 1107 of the Bankruptcy Code.  The Debtor

---

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 21

Appx. 0293

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 23 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 23 of 35   PageID 343
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 22 of 34

therefore failed to comply with all applicable provisions of the Bankruptcy Code; *i.e.* Chapter 11.

43.     That section is broad, requiring the Debtor to "compl[y] with the applicable provisions of this title."  There is no exception for minor things, reports that need to be filed, or anything else.  Indeed, courts have correctly construed this section broadly, as it is an important safety mechanism to ensure that a plan proponent cannot simply ignore its obligations under the Bankruptcy Code yet confirm a plan just because its plan otherwise satisfies confirmation requirements, thereby sweeping all prior failures and defaults under the rug.  The District Court held that this section prohibited confirmation where the debtor had retained and paid professionals without proper bankruptcy court authority, even though the bankruptcy court later granted this relief *nunc pro tunc*.  *See In re Briscoe Enters. Ltd.*, 138 B.R. 795, 808-09 (N.D. Tex. 1992) ("[i]f that were all that was required, there would be no need for § 1129(a)(2)"), *rev'd* 994 F.2d 1160, 1170 (5th Cir.).  While this conclusion was reversed on appeal, because the bankruptcy court subsequently permitted the retention and payment *nunc pro tunc*, the Debtor here never made a request for leave to file its Bankruptcy Rule 2015.3 reports late, and it has never sought any *nunc pro tunc* relief regarding the same. And, as the Supreme Court has made clear, a court cannot use its *nunc pro tunc* authority to "make the record what it is not."  *Roman Catholic Archdiocese of San Juan v. Feliciano*, 140 S. Ct. 696, 701 (2020) (internal quotation omitted).

44.     A different district court affirmed a denial of a plan based on section 1129(a)(2) because the plan proponent had spent proceeds from a sale in violation of section 363(c) of the Bankruptcy Code.  *See Cothran v. United States*, 45 B.R. 836, 838 (S.D. Ga. 1984) ("[t]o the extent that the administrative provisions of Chapter 3 apply to cases under Chapter 11, a debtor must also abide by Chapter 3 or risk non-confirmation").   One

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 22

Appx. 0294

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 24 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 24 of 35    PageID 344
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 23 of 34

bankruptcy court denied confirmation under section 1129(a)(2) because the debtor refused to pay court-ordered administrative expense claims. *See In re Midwestern Cos.*, 55 B.R. 856, 863-64 (Bankr. D. Mont. 1985). A different bankruptcy court denied confirmation on the basis of section 1129(a)(2) because the debtor had failed to comply with the deadline to propose a small business plan. *See In re Win Trucking Inc.*, 236 B.R. 774, 778-79 (Bankr. D. Utah 1999).

45.     What these opinions demonstrate is that section 1129(a)(2) means what it says, and what it says is broad: if the plan proponent has not complied with chapter 11 (the "applicable provisions") then its plan cannot be confirmed. Period. And, as these opinions further confirm, the provisions of chapter 11 that must be complied with are all of them, as opposed to merely those governing the plan itself. Indeed, that is the point of section 1129(a)(1) of the Bankruptcy Code and there would be no need for a separate provision if all that was applicable was the statute governing confirmation itself. *See* 11 U.S.C. § 1129(a)(1).

46.     Notwithstanding the broad language of section 1129(a)(2) of the Bankruptcy Code, one bankruptcy court has concluded that section 1129(a)(2) "does not provide creditors with a 'silver bullet' to defeat confirmation based on each and every minor infraction of Title 11 that a debtor may commit." *In re Cypresswood Land Partners I*, 409 B.R. 396, 423-24 (Bankr. S.D. Tex. 2009). This opinion is wrong, however, and it should not be followed, for the simple reason that it reads into the statute an exception that is simply not there. *Connecticut Nat'l Bank v Germain*, 503 U.S. 249, 254 (1992) (Congress "says in a statute what it means and means in a statute what it says there"). Nor is a violation of the Bankruptcy Code a "silver bullet" that creditors have. A debtor obtains immense relief and benefits from Chapter 11 and requiring it to comply with its own obligations, and imposing upon it consequences if it fails to do so, should not be a controversial proposition. It is not the

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 23

Appx. 0295

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 25 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 25 of 35   PageID 345
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 24 of 34

creditor's "silver bullet"; it is the consequence, perhaps even penalty, for failure to comply with the law.

47.    But even if this opinion has some persuasiveness, compliance with Bankruptcy Rule 2015.3 is not a "minor infraction."   This is an important rule that provides all participants with transparency and some level of control over a debtor's ownership interest in other entities—here, interests worth hundreds of millions of dollars. *See, e.g., In re Sillerman*, 605 B.R. 631, 644 (Bankr. S.D.N.Y. 2019) (discussing importance of Rule 2015.3 reports: "[t]hese reports would supply the Court and creditors with relevant and material information regarding the Debtor's interest in his dozens of entities, thereby enhancing transparency and potentially laying bare any improper transfers or self-dealing").   What if a debtor is selling its interests and not accounting for the proceeds?   What if a debtor is using its control of those entities to cause them to dispose of their assets improperly, so as to remove them from creditor reach?   What if a debtor is channeling business or other estate resources into or through those entities?   As those entities are not debtors themselves, the bankruptcy court and creditors would have no other way of knowing what is going on with those assets except through compliance with Bankruptcy Rule 2015.3.  *See, e.g., In re Hoyle*, 2013 Bankr. LEXIS 420 at *12-*14 (Bankr. D. Idaho 2013) (detailing improper use and accounting of non-debtor entities owned by debtor).

48.    Bankruptcy Rule 2015.3 is not trivial or minor; it is very important.   Failure to comply with the Rule has led to conversion of the bankruptcy case:

> Winterhalter's failure deprived creditors of critical information regarding the Debtor's partnership interests, and Debtor's receipt and use of the partnership distributions created suspicion among the creditors, contributed to the multiple litigation between the Debtor and his creditors at almost every juncture of his Chapter 11 case, and ultimately contributed to the conversion of the Debtor's case from Chapter 11 to Chapter 7.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 24

Appx. 0296

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 26 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 26 of 35 PageID 346
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 25 of 34

*In re Grasso*, 586 B.R. 110, 150 (Bankr. E.D. Pa. 2018). Likewise, a failure to file the reports is cause to appoint a chapter 11 trustee or to dismiss the bankruptcy case. *See, e.g., In re Sillerman*, 605 B.R. 631, 644 (Bankr. S.D.N.Y. 2019). Thus, if the failure to timely file these reports is sufficient cause to convert or dismiss the case, or to appoint a chapter 11 trustee, then such failure cannot be described as trivial or a "minor infraction" even if there were a "minor infraction" exception to section 1129(a)(1).

**C.      MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT A STAY**

49.      The focus of the second element is whether, absent a stay pending appeal, the Movants may suffer irreparable injury in the form of effectively being denied appellate review due to mootness or similar considerations. *See In re Tex. Equip. Co.*, 283 B.R. 222, 228 (Bankr. N.D. Tex. 2002). This element puts the Movants in an awkward situation. On the one hand, they are not admitting that their appeal will be moot. On the other hand, they have to address the reality that mootness is a significant concern any time that a chapter 11 plan is on appeal.

50.      This is because consummation of a plan may render any challenges to confirmation thereof moot. *In re Westwood Plaza Apartments*, 150 B.R. at 169 (factor tilted in favor of granting stay); *Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, Case No. 3:17-CV-1958-G, 2018 WL 5113124, at *12 (N.D. Tex. Oct. 19, 2018) (equitable mootness more likely if no stay has been obtained and plan has been substantially consummated); *see also In re Best Products Co.*, 177 B.R. 791 (S.D.N.Y. 1995) (dismissing appeal of confirmation order as moot where appellant failed to seek stay of confirmation order and plan had been consummated). Indeed, the Fifth Circuit in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), recognized the potential issues with denying a stay of a confirmation order pending appeal:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 25

Appx. 0297

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 27 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 27 of 35   PageID 347
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 26 of 34

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be, too simplistic a response. A plan may be designed to take effect, as it was here, after a lapse of sufficient time to initiate appellate review. A supersedeas bond may be tailored to the scope of the appeal. An appeal may be expedited. As with all facets of bankruptcy practice, myriad possibilities exist. Thus, substantial legal issues can and ought to be preserved for review.

584 F.3d at 243.

51.     The unprecedented breadth of the Exculpation Provision and the Injunction has the potential to cause immediate and irreparable harm to the Movants and other parties in interest. These provisions have the cumulative effect of preventing the Movants, among other parties, from exercising their legal rights to pursue any claims or causes of action against non-debtor parties.[2] Indeed, the provisions are so broad that they essentially prevent the Movants from exercising their rights and remedies that arise post-confirmation in the ordinary course of business, despite the same being completely distinct from the bankruptcy case, and notwithstanding the basis or nature of the claim. In practical effect, the Movants will, at the very least, have to seek leave of the Court in order to seek any relief for any present or future actionable wrongs, whether contractual or under applicable non-bankruptcy law. Furthermore, if the stay is denied, the Movants could suffer harm for which they have no legal redress and which becomes moot - equitably or otherwise - before the District Court has an opportunity to rule.

52.     The impermissibility of the Exculpation Provision and Injunction is apparent, and absent a stay, will immediately deprive Movants of their due process rights and ability to seek legal redress for wrongs that may be suffered. The possibility of irreparable injury can

---

[2]     As the Court is aware, in light of the Debtor's termination of its shared services agreements with the Advisors, the Advisors and the Debtor are in the process of transferring to the Advisors their data held by the Debtor. It is too soon to determine whether this process will be satisfactorily concluded but, if it is not, the Movants may have additional claims and causes of action against the Debtor which would be subject to the Plan's exculpation and injunction provisions.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 26

Appx. 0298

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 28 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 28 of 35 PageID 348
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 27 of 34

only be remedied by a stay of the Confirmation Order.

53. Additionally, the Plan has the practical effect of enjoining the Movants from advising or causing the funds to remove the Debtor as manager of the CLOs or to join with other, non-enjoined funds, from removing the Debtor as manager. Should the Debtor engage in conduct after confirmation that justifies the removal of the Debtor as manager, the Movants will be prevented from being able to advise their clients accordingly or to take action on their behalf. This would cause Movants irreparable injury.

54. The Debtor will argue that there is no irreparable harm because the gatekeeper Injunction will permit the Movants to seek relief from the Court in order to exercise their rights. But, as argued above, this Court will not have post-confirmation jurisdiction over post-confirmation and post-assumption transactions and disputes. This is especially the case if the Bankruptcy Case is closed soon after confirmation, as may be likely given that most sizable claims have been adjudicated or compromised. Simply put, the Court, without jurisdiction, may nevertheless decide that a proposed action is not "colorable" as is required by the gatekeeper Injunction, meaning that the Movants will be prevented from acting without a court of proper jurisdiction reviewing the matter. At a minimum, the time it would take Movants to comply with the gatekeeping Injunction, during which time the Movants would be prevented from exercising their legitimate, contractual and statutory rights, imposes a substantial burden.

55. As a subset of the above, mootness will also arise because the Debtor has stated that it intends to liquidate and wind down the CLOs in approximately two years. Thus, by the time that the appeal of the Plan is ultimately concluded, the liquidation of the CLOs will have occurred in full or in large part, and even if the Movants prevail on appeal the damage will already have been done.

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 27

Appx. 0299

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 29 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 29 of 35 PageID 349
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 28 of 34

### D.    NO SUBSTANTIAL HARM TO DEBTOR OR OTHER PARTIES

56.    A stay pending appeal is also justified under the third prong because neither the Debtor, nor any of the Debtor's creditors, will be substantially harmed by a stay of the Confirmation Order pending appeal.  Moreover, the Court can fashion the stay to prevent harm to the Debtor and other parties.  *See In re Westwood Plaza Apartments*, 150 B.R. at 169 (conditioning stay of plan on, among other things, debtor's ability to pay administrative, tax and secured claims as provided for under the plan); *In re Thru*, 2018 WL 5113124, at *20 (recognizing availability of partial relief on appeal of plan with respect to exculpation provisions).

57.    Courts have found substantial harm to other parties if the stay would cause a significant delay in the administration of the estate or a delay in the distribution to creditors under the plan.  *In re Dernick*, 2019 WL 236999, at *4.  Here, a stay will not lead to any harm, much less substantial harm, to the Debtor or other creditors.  This is because the Debtor can continue doing exactly what it would do under the Plan: (i) the CEO/CRO is still in charge and the members of the creditors committee will be on the trust oversight board, with the addition of one additional member; (ii) the CEO/CRO can continue administering the estate the same as he is doing now; (iii) the CEO/CRO can continue managing affirmative litigation the same as he is doing now; (iv) the CEO/CRO can continue managing the CLOs and funds that the Debtor manages the same as he is doing now; (v) there is no exit financing under the Plan; (vi) there are no asset sales or compromises under the Plan that cannot be effectuated without the Plan; and (vii) there is no new money or new value being contributed under the Plan.  185:3-188:5.

58.    As the Debtor's CEO/CRO confirmed, "post-confirmation, you are basically going to continue managing the CLOs and funds and trying to monetize assets for creditors

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 28

Appx. 0300

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 30 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 30 of 35   PageID 350
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 29 of 34

the same as you are today." Confirmation Hearing Transcript (February 2, 2021) at 188:2-5. And, as the CEO/CRO confirmed, he does not "need anything in the plan that [he] does [not] have today to keep managing" the "Funds and the CLOs." *Id.* 188:23-189:2. Instead, as the CEO/CRO confirmed, the only difference is that he would not be willing to serve as the post-confirmation trustee without the Plan's channeling Injunction, and that the reorganized debtor would be unable to obtain directors and officers insurance. *Id.* 168:6-18. But that is precisely the point: a Plan should not have as its principal purpose the entry of an injunction limiting the ability of parties to exercise their rights for matters arising *after* confirmation and assumption.

59.     The Court should also take into account that 27 Class 8 creditors rejected the Plan, while only 17 accepted the Plan. It is the unsecured creditors who would be the only ones potentially prejudiced if the Plan is stayed, as that may delay their recoveries. But Class 8 overwhelmingly rejected the Plan. While 16 Class 7 convenience class creditors accepted the Plan, the total cost to pay those creditors is approximately $10 million. The Debtor has more than sufficient cash on hand to pay these creditors with an interim distribution if it so wished. The five subordinated creditors accepting the Plan do not matter, since they are not projected to receive anything under the Plan, and if they do receive anything, it will be years into the future after extensive litigation. As for the Class 2 Frontier Secured Claim, the Debtor has many options to treat this secured claim with adequate protection and other payments that it can do without need for the Plan.

60.     Finally, a stay pending appeal will actually protect the Debtor and its professionals. As demonstrated above, the District Court has already rejected an exculpation clause that is similar to the one in the Plan as a matter of law. Yet, as the Court heard at the confirmation hearing, the CEO/CRO would not be willing to serve as the post-confirmation trustee or manager of the Debtor without the Plan's Exculpation Provision and Injunction, and

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 29

Appx. 0301

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 31 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 31 of 35    PageID 351
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 30 of 34

the reorganized debtor would not be able to obtain directors and officers insurance. Should something arise after confirmation, with these provisions of the Plan reversed by an appellate court, the CEO/CRO, the reorganized debtor, and potentially others may face potential liability without coverage. All parties, and especially the CEO/CRO and the Debtor, should have a strong interest in ensuring that nothing of that sort happens—something best done by a stay pending appeal.

### E.     THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL

61.    Because the Exculpation Provision and the Injunction impermissibly infringe upon the contractual, legal and due process rights of parties in interest in the bankruptcy case, a stay pending appeal of such provisions will serve the public interest. A stay will ensure that non-debtor parties are held accountable for their post-petition and post-confirmation conduct, while preserving the rights and remedies of parties in interest under applicable non-bankruptcy law. Likewise, a stay will serve the public interest of respecting and upholding judicial precedent. The interests of many innocent, third party investors must also be taken into account, and their interests are not served by the Exculpation Provision and Injunction that may effectively and permanently prevent them from exercising legitimate contract and statutory rights. Finally, the public has a strong interest in ensuring that securities laws are complied with, including the Investment Advisers Act of 1940. The Plan's Exculpation Provision and Injunction threaten to substantially vitiate these laws and effectively relieve the Debtor from its obligations and duties (and potential liabilities) thereunder.

### F.     SECURITY FOR STAY PENDING APPEAL

62.    The Court may, but need not, condition a stay pending appeal on a bond or other security being posted. As this Court has summarized:

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 30

Appx. 0302

Case 22-03062-sgj Doc 10-9 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 32 of 35
Case 3:21-cv-01169-N Document 10-9 Filed 10/05/21 Page 32 of 35 PageID 352
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21 Entered 02/28/21 09:49:28 Page 31 of 34

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. The bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal. In deciding how best to secure the non-appealing party from loss, the court applies general equitable principles.

*In re Tex. Equip. Co*., 283 B.R. at 229.

63. Normally, the amount of any bond should be the amount of the judgment being stayed. The Movants are aware of one bankruptcy court concluding that, when the order being stayed is a confirmation order, the amount of the bond should be the entire amount of debt subject to the plan. *See In re Scotia Dev. LLC*, 2008 Bankr. LEXIS 5127 *32-*33 (Bankr. S.D. Tex. 2008). Here, however, the Plan does not propose to pay any claims any time soon, except for administrative claims and Class 7 convenience claims, both of which can be satisfied by the amount of cash the Debtor is presently holding. Thus, an analogy to *Scotia Dev. LLC* is not warranted, and applying its reasoning here would lead to a punitive result that would actually better the returns to creditors, meaning that it would do far more than preserve the status quo and protect against harm resulting from the stay pending appeal itself. Moreover, the risk in *Scotia Dev. LLC* was that the debtor's business would collapse from a lack of funding that the confirmed plan provided for. *See id*. at *25 ("the continued viability and operation of the debtors must be protected. All parties agree that some extraordinary program is required to allow these debtors to survive more than even ten days. Without additional cash, both Scopac and Palco would have to shut down immediately"). No such considerations are present here.

64. Instead, the Movants respectfully submit that any such conclusion would be punitive and would not be warranted by the facts. *See, e.g., In re Gleasman*, 111 B.R. 595, 604 (Bankr. W.D. Tex. 1990) ("The purpose of a bond, after all, is to protect Franklin against

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION ORDER, AND BRIEF IN SUPPORT THEREOF—Page 31

Appx. 0303

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 33 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 33 of 35   PageID 353
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 32 of 34

any loss, not to confer a windfall.  The property itself is not going anywhere").  As discussed above, the Plan does not give the Debtor anything it does not have now.  No new funds are coming in, no exit financing is involved, and no asset sale is provided for in the Plan.  Rather, the Debtor will simply continue doing under the Plan what it is doing now: it will manage its assets, funds, and the CLOs, and will continue monetizing its assets and managing litigation the same as now.  Whatever the value of the assets being administered is today will be the same under the Plan and without the Plan.  No new funds and no exit financing is involved.  Nothing in the Plan gives the Debtor tools to administer its estate that it lacks at present, and nothing in the Plan will increase the value of assets available for creditors.  Thus, there will be no harm to the Debtor or to the estate.

65.     The only conceivable harm is from a delay in certain payments to certain creditors.  If the Plan is affirmed, then those creditors would not have the use of those funds for a period of time.  Here, the Debtor believes that it will distribute approximately $60 million to Class 7 and Class 8 creditors within one year of the Plan being confirmed.  As unsecured creditors, these creditors would be entitled to interest at the federal rate of post-judgment interest.  *See In re Thru Inc.*, 2017 Bankr. LEXIS 1902 at *28-29.  That rate is at present less than 1% and is unlikely to rise past that amount during the period of any stay.  Thus, the interest that any creditor may be able to claim for any delay in payment is less than 1%, or less than $600,000.00.

66.     The Movants therefore submit that a bond or security of $1 million is sufficient to protect the Debtor and its estate from any harm resulting from the delay in the effectiveness of the Plan.

## IV.     CONCLUSION

67.     Based on the foregoing, a stay of the Confirmation Order is justified under

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 32

Appx. 0304

Case 22-03062-sgj Doc 10-9 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 34 of 35
Case 3:21-cv-01169-N   Document 10-9   Filed 10/05/21   Page 34 of 35   PageID 354
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21   Entered 02/28/21 09:49:28   Page 33 of 34

each of the applicable factors for a stay pending appeal.  Accordingly, the Court should grant

a stay of the Confirmation Order.

      WHEREFORE, the Movants request that the Court enter an Order:

    1.    Staying the effectiveness of the Confirmation Order pending appeal; and

    2.    Granting such other relief as is just and proper.

Dated:  February 28, 2021        **MUNSCH HARDT KOPF & HARR, P.C.**

        By: /s/ Davor Rukavina
           Davor Rukavina, Esq.
           Texas Bar No. 24030781
           Julian P. Vasek, Esq.
           Texas Bar No. 24070790
           3800 Ross Tower
           500 N. Akard Street
           Dallas, Texas  75201-6659
           Telephone: (214) 855-7500
           Facsimile: (214) 855-7584
           E-mail: drukavina@munsch.com

        **COUNSEL FOR HIGHLAND CAPITAL
        MANAGEMENT FUND ADVISORS, L.P.,
        AND NEXPOINT ADVISORS, L.P.**

EMERGENCY MOTION OF THE ADVISORS FOR STAY PENDING APPEAL OF THE CONFIRMATION
ORDER, AND BRIEF IN SUPPORT THEREOF—Page 33

**Appx. 0305**

Case 22-03062-sgj Doc 10-9 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 35 of 35
Case 3:21-cv-01169-N    Document 10-9    Filed 10/05/21    Page 35 of 35    PageID 355
Case 19-34054-sgj11 Doc 1955 Filed 02/28/21    Entered 02/28/21 09:49:28    Page 34 of 34

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this the 28th day of February, 2021, true and correct copies of this document were electronically served on parties entitled to notice thereof, including on counsel for the Debtor.

Dated:  February 28, 2021

*/s/ Davor Rukavina*
Davor Rukavina
