# EXHIBIT 10

Case 22-03062-sgj Doc 10-10 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 2 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 2 of 21   PageID 357
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 1 of 20

Docket #1967  Date Filed: 03/03/2021

K&L GATES LLP
Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

*Counsel for Highland Income Fund, NexPoint*
*Strategic Opportunities Fund, Highland Global*
*Allocation Fund, and NexPoint Capital, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P. | ) | Case No. 19-34054 (SGJ11) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) |  |

## MOTION FOR STAY PENDING APPEAL OF THE COURT'S ORDER
## CONFIRMING THE DEBTOR'S FIFTH AMENDED PLAN

Highland Income Fund, NexPoint Strategic Opportunities Fund, Highland Global

Allocation Fund, and NexPoint Capital, Inc. (each, a "**Fund**," and collectively, the "**Funds**" or

"**Movants**"), by and through their undersigned counsel, and pursuant to Rule 8007 of the Federal

Rules of Bankruptcy Procedure, respectfully move (the "**Motion**") this Court to stay its *Order (I)*

*Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as*

*Modified) and (II) Granting Related Relief* [Dkt. No. 1943] (the "**Confirmation Order**") pending

appeal.  In support of the Motion, the Movants respectfully show the Court as follows:

### I.       PRELIMINARY STATEMENT

1934054210303000000000006

Appx. 0308

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 3 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 3 of 21 PageID 358
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 2 of 20

1.     On February 22, 2021, this Court entered its Confirmation Order in the above-captioned chapter 11 case of Highland Capital Management, L.P. (the "**Debtor**"). On March 3, 2021, Movants timely filed a notice of appeal pursuant to Bankruptcy Rule 8002. Movants maintain that the Confirmation Order contravenes established law in the Fifth Circuit by confirming a plan that contains non-consensual non-debtor exculpation and injunction provisions that are overly broad. Further, the Confirmation Order approves a channeling injunction that impermissibly attempts to confer jurisdiction in the Court over post-confirmation matters with respect to which it would otherwise lack subject matter jurisdiction. The aforementioned provisions, which are now part of a confirmed plan, are sweeping and unprecedented.

2.     Accordingly, Movants respectfully request a stay pending appeal of the Confirmation Order. If a stay is not granted, Movants' rights would be severely prejudiced pending the ruling on appeal, even if the ruling on appeal ultimately results in Movants' favor. There is a present threat that the exculpation and injunction provisions preclude Movants from being able to exercise their contractual rights under certain management contracts with collateralized loan obligations (the "**CLOs**") that are assumed under the confirmed plan. Moreover, Movants' rights could be mooted by the time of any final resolution on appeal because by that time, the Debtor may have already completed its liquidation and wind down of the CLOs' assets. A stay pending appeal does not present any serious risk of harm to the Debtor or its creditors. Furthermore, the public interest supports a stay pending appeal by ensuring that the Debtor and non-debtor parties are held responsible for their performance and compliance under contracts the Debtor has assumed, including the CLO management contracts. Accordingly, and as required by Bankruptcy Rule 8007, Movants, with all due respect, move this Court for a stay of its own Confirmation Order.

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 4 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21    Page 4 of 21   PageID 359
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 3 of 20

## II.    BACKGROUND

### A.    General Background on the Funds

3.    Each of the Funds is a publicly registered investment company or business development company under the Investment Company Act of 1940, as amended, 15 U.S.C. § 80a-1, *et. seq.* (the "**1940 Act**").  Each of the Funds is regulated by the U.S. Securities and Exchange Commission (the "**SEC**") and by a comprehensive set of securities laws, including the Securities Act of 1933, the Securities Exchange Act of 1934, and the 1940 Act, in addition to various state law provisions (collectively, the "**Securities Laws**").  Collectively, the Funds have thousands of shareholders, ranging from large institutional investors to small individual shareholders, and have more than $1 billion in assets under management.

4.    Each Fund is advised by either Highland Capital Management Fund Advisors, L.P., or NexPoint Advisors, L.P. (each, an "**Advisor**," and collectively, the "**Advisors**").  The Advisors are investment advisers registered with the SEC as investment advisers under the Investment Advisers Act of 1940, as amended, 15 U.S.C. § 80b-1, *et seq.* (the "**Advisers Act**").

5.    As public registered investment companies and a business development company, each Fund is regulated under the 1940 Act and is governed by a Board of Trustees (a "**Board**").  Each Board owes fiduciary duties to its Funds and to the Funds' shareholders.  The Boards also have obligations under the Securities Laws to exercise independent business judgment and act in the best interests of the Funds and their shareholders.

6.    The Boards have regular quarterly meetings, and frequently meet in between the quarterly meetings regarding a variety of Fund operational issues.  The SEC routinely describes and emphasizes the oversight duties of investment company boards in its rulemaking efforts. The Boards' members include a number of sophisticated investment professionals, all but one of whom

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 5 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 5 of 21 PageID 360
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 4 of 20

is independent from the Advisors and who are advised by their own legal counsel.

7.     Additionally, the Funds do not have employees. Rather, the Boards retain the Advisors to advise the Funds, subject to the Boards' oversight.

8.     The Funds also own the preference shares in certain CLOs for which the Debtor serves as portfolio manager, and own the majority of preference shares in at least three of such CLOs. The CLOs are securitization vehicles that were formed to acquire and hold pools of debt obligations. They also issued various tranches of notes and preference shares, which are intended to be repaid from proceeds of the subject CLO's pool of debt obligations. The notes issued by the CLOs are paid according to a contractual priority of payments, with the value remaining in the CLOs after the notes are fully paid flowing to the holders of the preference shares.

9.     The CLO management agreements generally allow the holders of preference shares, i.e., the Funds, to remove the portfolio manager for cause, and some allow removal without cause.

**B.     The Confirmation Order**

10.     On October 16, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing the above-captioned bankruptcy case.

11.     On November 24, 2020, the Debtor filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* [Dkt. No. 1472] (the "**Fifth Amended Plan**").

12.     Movants, among other parties in interest, filed an objection to the Fifth Amended Plan. *See, e.g.,* Dkt. No. 1670.

13.     On January 22, 2021, the Debtor filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Dkt. No. 1808] (the "**Plan**").

14.     Article IX of the Plan contains the following exculpation provision (the

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 6 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 6 of 21 PageID 361
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 5 of 20

"**Exculpation Provision**"):[1]

### C.    <u>Exculpation</u>

Subject in all respects to ARTICLE XII.D of this Plan, to the maximum extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the negotiation and pursuit of the Disclosure Statement, the Plan, or the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan (including the Plan Supplement) or any related agreements, instruments, or other documents, the solicitation of votes on the Plan, the offer, issuance, and Plan Distribution of any securities issued or to be issued pursuant to the Plan, including the Claimant Trust Interests, whether or not such Plan Distributions occur following the Effective Date; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to (a) any acts or omissions of an Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct or (b) Strand or any Employee other than with respect to actions taken by such Entities from the date of appointment of the Independent Directors through the Effective Date. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan, including ARTICLE IV.C.2, protecting such Exculpated Parties from liability.

Dkt. No. 1808 at 54-55. "Exculpated Parties," in turn, means, collectively:

(i) the Debtor and its successors and assigns, direct and indirect majority-owned subsidiaries, and the Managed Funds,[2] (ii) the Employees, (iii) Strand, (iv) the Independent Directors, (v) the Committee, (vi) the members of the Committee (in their official capacities), (vii) the Professionals retained by the Debtor and the Committee in the Chapter 11 Case, (viii) the CEO/CRO; and (ix) the Related Persons of each of the parties listed in (iv) through (viii); *provided, however,* that, for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd., and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries, members, and managed entities), Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and managed entities), NexBank, SSB (and any of

---

[1] Capitalized terms used, but not otherwise defined, shall have the meanings ascribed to such terms in the Plan.
[2] To avoid any confusion, Movants note that the Plan defines the Managed Funds as "Highland Multi-Strategy Credit Fund, L.P., Highland Restoration Capital Partners, L.P., and any other investment vehicle managed by the Debtor pursuant to an Executory Contract assumed pursuant to this Plan." Dkt. No. 1808 at 17.

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 7 of 21
Case 3:21-cv-01169-N    Document 10-10    Filed 10/05/21    Page 7 of 21    PageID 362
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 6 of 20

its subsidiaries), the Hunter Mountain Investment Trust (or any trustee acting for the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or Grant Scott is included in the term "Exculpated Party."

Dkt. No. 1808 at 15.

15.    Article IX of the Plan also contains an injunction provision (the "**Injunction**"), which provides, in pertinent part, as follows:

### F.    <u>Injunction</u>

Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.

. . . .

Subject in all respects to ARTICLE XII.D, no Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected Party; provided, however, the foregoing will not apply to a claim or cause of action against Strand or against any Employee other than with respect to actions taken, respectively, by Strand or by such Employee from the date of appointment of the Independent Directors through the Effective Date. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable and, only to the extent legally permissible and as provided for in ARTICLE XI, shall have jurisdiction to adjudicate the underlying colorable claim or cause of action.

Dkt. No. 1808 at 57-58.  "Enjoined Parties," in turn, is defined to mean:

(i) all Entities who have held, hold, or may hold Claims against or Equity Interests in the Debtor (whether or not proof of such Claims or Equity Interests has been filed and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan), (ii) James Dondero ("Dondero"), (iii) any Entity that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 8 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 8 of 21 PageID 363
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 7 of 20

capacity in which such Entity appeared and any other party in interest, (iv) any
Related Entity, and (v) the Related Persons of each of the foregoing.

Dkt. No. 1808 at 14. "Protected Parties" means, collectively:

> (i) the Debtor and its successors and assigns, direct and indirect majority-owned
> subsidiaries, and the Managed Funds, (ii) the Employees, (iii) Strand, (iv) the
> Reorganized Debtor, (v) the Independent Directors, (vi) the Committee, (vii) the
> members of the Committee (in their official capacities), (viii) the Claimant Trust,
> (ix) the Claimant Trustee, (x) the Litigation Trustee, (xi) the Litigation Trustee,
> (xii) the members of the Claimant Trust Oversight Committee (in their official
> capacities), (xiii) New GP LLC, (xiv) the Professionals retained by the Debtor and
> the Committee in the Chapter 11 Case, (xv) the CEO/CRO; and (xvi) the Related
> Persons of each of the parties listed in (iv) through (xv); *provided, however,* that,
> for the avoidance of doubt, none of James Dondero, Mark Okada, NexPoint
> Advisors, L.P. (and any of its subsidiaries and managed entities), the Charitable
> Donor Advised Fund, L.P. (and any of its subsidiaries, including CLO Holdco, Ltd.,
> and managed entities), Highland CLO Funding, Ltd. (and any of its subsidiaries,
> members, and managed entities), NexBank, SSB (and any of its subsidiaries),
> Highland Capital Management Fund Advisors, L.P. (and any of its subsidiaries and
> managed entities), the Hunter Mountain Investment Trust (or any trustee acting for
> the trust), the Dugaboy Investment Trust (or any trustee acting for the trust), or
> Grant Scott is included in the term "Protected Party."

Dkt. No. 1808 at 19.

16.     On February 2 and 3, 2021, the Court conducted a hearing on confirmation of the

Plan, and on February 22, 2021, entered the Confirmation Order.

17.     Movants timely appealed the Confirmation Order by filing a Notice of Appeal on

March 3, 2021 [Dkt. No. 1966].

### III.     ARGUMENTS AND AUTHORITIES

#### A.     Standard for a Stay Pending Appeal

18.     By the Motion, Movants request a stay of the Confirmation Order pending appeal

pursuant to Bankruptcy Rule 8007.

19.     Bankruptcy Rule 8007 allows a bankruptcy court to stay a judgment in order to

maintain the status quo pending appeal.  Fed. R. Bankr. P. 8007(a)(1)(A).

Appx. 0314

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 9 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21    Page 9 of 21 PageID 364
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05    Page 8 of 20

20.    The decision of whether to grant a stay pending appeal under Bankruptcy Rule 8007 is a matter within the court's discretion. *In re Dye*, Case No. 06-71024, 2007 Bankr. LEXIS 2972, at *3 (Bankr. N.D. Ga. July 24, 2007) (discussing former Bankruptcy Rule 8005). "That discretion is by design a flexible tool which permits the bankruptcy court to tailor relief to the circumstances of the particular case." *Id.* (citing *Gleasman v. Jones, Day, Reavis & Pogue*, 111 B.R. 595 (Bankr. W.D. Tex. 1990)).

21.    In determining whether to grant a discretionary stay pending appeal under Bankruptcy Rule 8007, courts consider the following criteria:

(1) the likelihood that the movant will prevail on the merits of the appeal;

(2) whether the movant will suffer irreparable injury if the stay is denied;

(3) whether other parties would suffer substantial harmed if the stay is granted; and

(4) whether the public interest will be served by granting the stay.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987); *In re Tex. Equip. Co.*, 283 B.R. 222, 226-27 (Bankr. N.D. Tex. 2002). In the Fifth Circuit, each of the foregoing criteria must be satisfied by the party requesting the stay. *In re Tex. Equip. Co.*, 283 B.R. at 227; *see also In re Dernick*, Case No. 18-32417, 2019 WL 236999, at *2 (Bankr. S.D. Tex. Jan. 16, 2019) (movants must prove entitlement to relief by a preponderance of the evidence). However, the first two elements are the most critical. *Saldana v. Saldana*, 2015 WL 502145, at *2 (N.D. Tex. Aug. 25, 2015).

22.    The nature of an order confirming a plan of reorganization makes a stay pending appeal uniquely important. Without a stay of such an order, "it is extremely unlikely that Appellants will ever be able to have meaningful appellate review of the rulings of the Bankruptcy Court, a non-Article III court, and in any event, a lower court. The ability to review decisions of

Appx. 0315

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 10 of 21
Case 3:21-cv-01169-N    Document 10-10    Filed 10/05/21    Page 10 of 21    PageID 365
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 9 of 20

the lower courts is the guarantee of accountability in our judicial system. . . . Thus, the ability to appeal a lower court ruling is a substantial and important right." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 342 (S.D.N.Y. 2007).

23.    As discussed herein, a stay of the Confirmation Order is justified.

**B.    There is a Likelihood of Success on the Merits**

24.    With respect to the first factor, the U.S. Court of Appeals for the Fifth Circuit has recognized that a movant must either present a prima facie case, but need not show that it is certain to win, or, if a serious legal question is involved, must present a substantial case on the merits and show that the balance of equities weighs heavily in favor of granting the stay. *In re First S. Sav.*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999, at *2; *In re Tex. Equip. Co.*, 283 B.R. at 227. The standards provided by substantive law guide the court in determining whether a movant has shown a likelihood of success on the merits. *In re Dernick*, 2019 WL 236999, at *2.

25.    Where an appeal involves questions of law, "the movant more easily satisfies the first element." *In re Tex. Equip. Co.*, 283 B.R. at 227. With respect to confirmation of a chapter 11 plan, the bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Tex. Grand Prairie Hotel Realty LLC*, 710 F.3d 324, 326 n.1 (5th Cir. 2013). The Movants' appeal relates to the Exculpation Provision and the Injunction, which are legal issues that will be subject to *de novo* review.

26.    The Movants have shown a likelihood of success on the merits. The Exculpation Provision and Injunction provided for in the Plan contravene established law. The Fifth Circuit has held that exculpation provisions designed to absolve parties other than the debtor and the creditors' committee of any negligent conduct that occurred during the course of the bankruptcy are unenforceable. *In re Pac. Lumber Co.*, 584 F.3d 229, 253 (5th Cir. 2009). To the contrary,

**Appx. 0316**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 11 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 11 of 21   PageID 366
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 10 of 20

Fifth Circuit authorities broadly "foreclose non-consensual non-debtor releases and permanent injunctions." *Id.* at 252 (citing authorities); *see also Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, Civil Action No. 3:17-CV-1958-G, 2018 WL 5113124, at *22-23 (N.D. Tex. Oct. 19, 2018). Whereas exculpation of the debtor is justified by section 524 of the Bankruptcy Code, and exculpation of creditors' committees has been deemed justified by section 1103 of the Bankruptcy Code, there is no authority justifying an extension of exculpation protections to other parties, even if the parties sought to be exculpated participated significantly in formulating the confirmed plan. *In re Pac. Lumber*, 584 F.3d at 253 (noting that the creditors' committee and its members were "the only disinterested volunteers among the parties sought to be released"); *see also In re Pilgrim's Pride Corp.*, Case No. 08-45664, 2010 WL 200000, at *5 (Bankr. N.D. Tex. Jan. 14, 2010) ("Because *Pacific Lumber* is binding precedent, the court may not, over objection, approve through confirmation of the Plan third-party protections, other than those provided to the Committees, members of the Committees, and the Committees' Professionals.").

27.    However, the Plan extends the Exculpation Provision to not only the Debtor, the creditors' committee, and their professionals, but also, impermissibly, to the Debtor's majority-owned subsidiaries, the Managed Funds, Employees, Strand, the Independent Directors, the CEO/CRO, and other Related Persons, in contravention of established precedent.  Such parties are not "disinterested volunteers" akin to the creditors' committee, and even if they were, Fifth Circuit precedent does not support their exculpation from liability.

28.    Furthermore, there is no clear end date with respect to the Exculpation Provision. The Exculpation Provision has the practical effect of allowing the Exculpated Parties to escape liability for post-confirmation conduct that goes beyond activity relating to the bankruptcy case, formulation of the Plan, or the administration of the estate, and allows the Exculpated Parties to

**Appx. 0317**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 12 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 12 of 21   PageID 367
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 11 of 20

escape liability that may arise in ordinary course, post-petition relationships of the parties, such as liability for an ordinary breach of contract.

29.    Indeed, the district court, in *In re Thru, Inc.*, struck down a virtually identical exculpation clause as the one in the Plan.  2018 WL 5113124, at *22-23.  The exculpation clause in that case provided as follows:

> Neither the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals (collectively, the "Exculpated Persons"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document.  The Exculpated Persons shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

*Id.* at *22.

30.    Because the district court has already concluded that confirmation of a plan containing a virtually identical exculpation provision constituted clear error, the Movants have demonstrated a likelihood of success on the merits of their appeal.  Here, the Exculpation Provision is even broader than the one at issue in *In re Thru*, as it protects non-debtor entities and their directors, is not limited to bankruptcy administration matters, and is not limited in time to the pre-Effective Date period.

31.    Moreover, the Court's stated reasons for allowing the Exculpation Provision, as expressed in the Confirmation Order, on their face do not apply to many of the Exculpated Parties. The Court found that dicta in *Pacific Lumber* that "costs the released parties might incur defending against suits alleging such negligence are unlikely to swamp either these parties or the

11

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 13 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 13 of 21   PageID 368
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 12 of 20

consummated reorganization" hinted that the equities and/or economics of a case might justify a non-debtor exculpation provision.  While Movants concede it is possible that litigation against some of the Exculpated Parties, such as the Debtor, the Independent Directors, the CEO/CRO, and even the Employees, could hamper reorganization efforts, there is no foreseeable or expressed concern that litigation against other Exculpated Parties, such as the Debtor's owned subsidiaries and Managed Funds, or the Related Persons, would have any impact on reorganization efforts. The Court also found that the Independent Directors, and by extension the CEO/CRO, fell within a policy-based exclusion as being akin to a creditors' committee or its members, but the Independent Directors and the CEO/CRO are only one subset of the Exculpated Parties.  The Court made no finding that exculpation of any of the other Exculpated Parties could be justified under this rationale.  Finally, again only with respect to the Independent Directors, the Court found that they were already exculpated by virtue of its January 9, 2020 order at Docket No. 339. Accordingly, even if there is a basis in law for extending exculpation protections to certain of the Exculpated Parties, namely the Independent Directors and the CEO/CRO, there is no stated or implied basis for allowing the Exculpation Provision with respect to any of the other Exculpated Parties.[3]

32.     Furthermore, the sweeping Injunction preventing parties from pursuing causes of action against the non-debtor Protected Parties effectively discharges non-debtors and contravenes

---

[3] It is also worth noting that the breadth of the Exculpation Provision *does* serve to discharge non-debtors in contravention of section 524 of the Bankruptcy Code.  Under section 1141(d) of the Bankruptcy Code, confirmation of a plan discharges the debtor from any debt "that arose before the date of such confirmation."  11 U.S.C. § 1141(d)(1).  Section 524 simply provides the effect of a discharge granted under another chapter of the Bankruptcy Code.  Thus, to the extent that the Exculpation Provision exculpates non-debtor parties from claims arising prior to the date of confirmation, it has the effect of granting a discharge to such parties.  With this understanding in mind, the Fifth Circuit's bar on exculpation provisions with respect to non-debtor third parties that are not co-liable with the debtor avoids conflict between sections 524(e) and 1141(d)(1) of the Bankruptcy Code.  Movants submit that the decision of the U.S. Court of Appeals for the Ninth Circuit, cited favorably by the Court in its oral ruling, misses this point.

Appx. 0319

Case 22-03062-sgj Doc 10-10 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 14 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 14 of 21   PageID 369
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 13 of 20

established Fifth Circuit precedent.  The Injunction is significantly broader than injunctions that have been struck down by courts in the Fifth Circuit.  In the recent case of *In re Thru, Inc.*, the district court struck down an injunction that purported to enjoin causes of action held against the debtor or the estate and that arose prior to the effective date of the plan from being brought against certain non-debtor protected parties.  2018 WL 5113124, at *21-22.  The district court found that it was clearly erroneous for the bankruptcy court to approve the injunction, which the bankruptcy court approved under section 105 of the Bankruptcy Code, because it effectively discharged non-debtors.  *Id.*  The Injunction in the Plan is broader than the injunction at issue in *In re Thru* in several important respects, as the Plan Injunction is not limited to claims that arose prior to the Effective Date, and is not limited to claims that the Enjoined Parties hold against the Debtor.  Rather, the Injunction appears to have no end date, so long as a claim or cause of action arises out of some future administration or implementation of the Plan.  Moreover, and significantly, the Injunction precludes Enjoined Parties from bringing claims held *against the Protected Parties* -- not just claims held against the Debtor or the estate.  *See also In re Pilgrim's Pride*, 2010 WL 200000, at *5 n.14 (*Pacific Lumber* prohibits exculpatory language that would bar outright actions against the debtor's management and professionals for their actions taken during a chapter 11 case).

33.     The propriety of the Injunction is not saved by the ability of an Enjoined Party to bring such claim if the Court so allows.  In fact, the channeling nature of the Injunction is impermissible as well.  As drafted, the Injunction is broad enough to cover claims and causes of action that arise out of post-confirmation, ordinary course transactions between the Reorganized Debtor and/or non-debtor parties and other parties in interest and which do not have any actual relationship to the Plan or its implementation.  The Court lacks subject matter jurisdiction over the

Appx. 0320

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 15 of 21
Case 3:21-cv-01169-N    Document 10-10    Filed 10/05/21    Page 15 of 21    PageID 370
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 14 of 20

breadth of actions covered by the Injunction.  *See In re CJ Holding Co.*, 597 B.R. 597, 604 (S.D.

Tex. 2019) ("After confirmation, 'the debtor's estate, and thus bankruptcy jurisdiction, ceases to

exist, other than for matters pertaining to the implementation or execution of the plan.'") (quoting

*In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016)); *see also In re Pilgrim's Pride*, 2010 WL 200000,

at *5, n.14 (bankruptcy court could retain *limited* jurisdiction to channel claims against the debtors'

management and professionals stemming from their conduct during the chapter 11 cases, but

*Pacific Lumber* prohibits exculpatory language that would bar such claims outright).  Therefore,

the channeling Injunction is impermissible because the Court appears to lack jurisdiction to even

consider whether an enjoined action is colorable.  The channeling Injunction goes far beyond what

the Court has jurisdiction to channel to itself.  Parties cannot create indefinite subject matter

jurisdiction where none otherwise exists.

34.    Furthermore, the Court's justification of the gatekeeping Injunction is based

primarily on the litigiousness of Dondero and his controlled entities.  However, this justification

does not extend to the Funds, which are controlled by independent boards, as discussed above, and

are wholly independent of Dondero.  This reality reflects why the gatekeeping Injunction is overly

broad, as it serves to prevent innocent third parties from exercising their legal rights.

35.    Accordingly, to the extent that the Confirmation Order authorizes the Exculpation

Provision and the Injunction, it does so based upon an erroneous interpretation of the law and is

an abuse of discretion.  *In re Tex. Equip. Co.*, 283 B.R. at 227.

36.    Second, this element is also satisfied because the Confirmation Order, to the extent

it approves the Exculpation Provision and the Injunction, presents a serious legal question.  At a

minimum, Movants have shown a substantial case on the merits and the balance of equities weigh

heavily in favor of a stay.  *See In re First S. Sav.*, 820 F.2d at 704; *In re Dernick*, 2019 WL 236999,

**Appx. 0321**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 16 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 16 of 21   PageID 371
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 15 of 20

at *3; *In re Tex. Equip. Co.*, 283 B.R. at 227. "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations." *In re Dernick*, 2019 WL 236999, at *3; *see In re Westwood Plaza Apartments, Ltd.*, 150 B.R. 163, 168 (Bankr. E.D. Tex. 1993) (serious legal question existed with respect to the appropriate standard for determining the market rate of interest in a cramdown plan, even though no likelihood of success on the merits). Here, the Exculpation Provision and the Injunction violate established Fifth Circuit precedent, and the Confirmation Order's approval of such provisions is clearly erroneous. Upholding judicial precedent is a significant public interest, and the allowance of these provisions will cause lasting effects on parties in interest. Indeed, the Injunction is so broad that it will prevent parties, such as the Movants, from enforcing their rights with respect to post-confirmation transactions unrelated to the bankruptcy case unless they first seek authority to do so from the Court. Not only does this prevent a significant hurdle to the enforcement of rights, but it presents a serious due process concern.

37.     Accordingly, it is likely that the Confirmation Order will be reversed to the extent it allows the Exculpation Provision and the Injunction. At the very least, the validity of the Exculpation Provision and the Injunction presents serious legal issues, Movants have presented a substantial case on the merits, and as discussed herein, the balance of equities weigh in favor of issuing a stay.

### C.     Movants will Suffer Irreparable Injury without a Stay

38.     The second factor concerns whether the moving party will suffer irreparable injury if the stay is denied because it will effectively be denied appellate review due to mootness or similar considerations. *In re Tex. Equip. Co.*, 283 B.R. at 228. This factor also warrants a stay of the Confirmation Order.

**Appx. 0322**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 17 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 17 of 21 PageID 372
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 16 of 20

39.    Consummation of a plan may render any challenges to confirmation thereof moot. *In re Westwood Plaza Apartments*, 150 B.R. at 169 (factor tilted in favor of granting stay); *In re Thru, Inc.*, 2018 WL 5113124, at *12 (equitable mootness more likely if no stay has been obtained and plan has been substantially consummated); *see also In re Best Products Co.*, 177 B.R. 791 (S.D.N.Y. 1995) (dismissing appeal of confirmation order as moot where appellant failed to seek stay of confirmation order and plan had been consummated). Indeed, the Fifth Circuit in *In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009), recognized the potential issues with denying a stay of a confirmation order pending appeal:

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be, too simplistic a response. A plan may be designed to take effect, as it was here, after a lapse of sufficient time to initiate appellate review. A supersedeas bond may be tailored to the scope of the appeal. An appeal may be expedited. As with all facets of bankruptcy practice, myriad possibilities exist. Thus, substantial legal issues can and ought to be preserved for review.

584 F.3d at 243.

40.    The unprecedented breadth of the Exculpation Provision and the Injunction has the potential to cause immediate and irreparable harm to the Movants and other parties in interest. These provisions have the cumulative effect of preventing Movants, among other parties, from exercising their legal rights to pursue any claims or causes of action, however distantly related to the bankruptcy case. Indeed, the provisions are so broad that they would prevent Movants from exercising their contractual rights and remedies that arise post-confirmation in the ordinary course of business under the CLO management agreements, and insulate the Debtor as well as non-debtor parties from any corresponding liability, despite the same being completely distinct from the bankruptcy case, and notwithstanding the basis or nature of the claim. In effect, even if the Debtor were to engage in conduct post-confirmation that presented a basis for the Movants to remove the

Appx. 0323

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 18 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 18 of 21   PageID 373
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21   Entered 03/03/21 14:43:05   Page 17 of 20

Debtor as manager under the CLO management agreements, they would be prevented from doing so. The Exculpation Provision and the Injunction impermissibly shields the Debtor and non-debtor parties from liability for post-petition and post-confirmation breaches of contract.

41.     In practical effect, Movants will, at the very least, have to seek leave of the Court in order to seek any relief for any present or future actionable wrongs, whether contractual or under applicable non-bankruptcy law.  However, the Court will not have jurisdiction with respect to disputes that arise post-confirmation.  It is thus foreseeable that the Court, without jurisdiction, could decide that a proposed claim is not colorable, preventing Movants from pursuing their contractual rights and remedies without review by a court of proper jurisdiction.  At a minimum, the time it would take Movants to comply with the gatekeeping Injunction, during which time the Movants would be prevented from exercising their legitimate contractual rights, imposes a substantial burden.

42.     Clearly, if the stay is denied, Movants could suffer harm for which they have no legal redress and which becomes moot - equitably or otherwise - before a decision is rendered on appeal.

43.     The impermissibility of the Exculpation Provision and Injunction is apparent, and absent a stay, will immediately deprive Movants of their rights and ability to seek legal redress for wrongs that may be suffered.  The possibility of irreparable injury can only be remedied by a stay of the Confirmation Order.

**D.     No Substantial Harm to the Debtor or Other Parties**

44.     A stay pending appeal is also justified under the third prong because neither the Debtor, nor any of the Debtor's creditors, will be substantially harmed by a stay of the Confirmation Order pending appeal.  Moreover, the Court can fashion the stay to prevent harm to

**Appx. 0324**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 19 of 21
Case 3:21-cv-01169-N Document 10-10 Filed 10/05/21 Page 19 of 21 PageID 374
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21 Entered 03/03/21 14:43:05 Page 18 of 20

the Debtor and other parties. *See In re Westwood Plaza Apartments*, 150 B.R. at 169 (conditioning stay of plan on, among other things, debtor's ability to pay administrative, tax and secured claims as provided for under the plan); *In re Thru*, 2018 WL 5113124, at *20 (recognizing availability of partial relief on appeal of plan with respect to exculpation provisions).

45.     Courts have found substantial harm to other parties if the stay would cause a significant delay in the administration of the estate or a delay in the distribution to creditors under the plan. *In re Dernick*, 2019 WL 236999, at *4. However, a stay of the Confirmation Order does not prevent the Debtor from continuing to operate as it has been doing during the bankruptcy case. Indeed, the Plan largely contemplates a continuation of the pre-confirmation business. The Debtor can thus continue administering the estate, as well as the CLOs and other managed funds. There are no asset sales or compromises under the Plan that depend upon it becoming effective, nor is there any contingent exit financing. Accordingly, staying the Confirmation Order will not hamper the reorganization.

46.     To the contrary, if the Confirmation Order is not stayed, parties in interest in the case would be significantly injured by the serious deprivation of their rights.

47.     A stay pending appeal is critical to preserve the status quo, which, in this instance involves preservation of the Movants' legal rights and remedies, while important legal issues are determined by the appellate court. *In re Tolco Props., Inc.*, 6 B.R. 490, 491 (Bankr. E.D. Va. 1980) ("The Court is of the opinion that the purpose of a stay pending appeal is to maintain the status quo and to prevent harm to the moving party between the time the original order was entered and the decision to appeal.").

**E.     The Public Interest is Served by a Stay**

48.     Because the Exculpation Provision and the Injunction impermissibly infringe upon

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 20 of 21
Case 3:21-cv-01169-N    Document 10-10    Filed 10/05/21    Page 20 of 21    PageID 375
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 19 of 20

the contractual, legal and due process rights of parties in interest in the bankruptcy case, a stay pending appeal of the Confirmation Order will serve the public interest. A stay will ensure that the Debtor as well as non-debtor parties are held accountable for their post-petition and post-confirmation conduct, while preserving the rights and remedies of parties in interest under applicable non-bankruptcy law. Likewise, a stay will serve the public interest of respecting and upholding judicial precedent.

49.    Moreover, a stay will protect the interests of the Movants and other innocent third party investors that have collectively invested more than $1 billion in the CLOs that the Debtor manages. The Exculpation Provision and Injunction, if not stayed, may effectively and permanently prevent these parties from exercising legitimate contractual rights.

50.    The public interest will further be served by preserving the status quo among the parties while the propriety of the Exculpation and Injunction provisions is resolved by the appellate court. "The case law signals a preference in favor of maintaining the status quo." *Skinner v. SBA (In re Skinner)*, 202 B.R. 867, 869 (W.D. Va. 1996) (*citing Feller v. Brock,* 802 F.2d 722, 727 (4th Cir. 1986)).

### IV.    <u>CONCLUSION</u>

51.    Based on the foregoing, a stay of the Confirmation Order is justified under each of the applicable factors for a stay pending appeal. Accordingly, the Court should grant a stay of the Confirmation Order with respect to such provisions pending appeal.

WHEREFORE, Movants request that the Court enter an Order:

1.    Staying the Confirmation Order pending appeal; and

2.    Granting such other relief as is just and proper.

**Appx. 0326**

Case 22-03062-sgj Doc 10-10 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 21 of 21
Case 3:21-cv-01169-N   Document 10-10   Filed 10/05/21   Page 21 of 21   PageID 376
Case 19-34054-sgj11 Doc 1967 Filed 03/03/21    Entered 03/03/21 14:43:05    Page 20 of 20

Dated:  March 3, 2021

**K&L Gates LLP**

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III (*pro hac vice*)
4350 Lassiter at North Hills Ave., Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7306
E-mail: lee.hogewood@klgates.com

Artoush Varshosaz (TX Bar No. 24066234)
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5659
E-mail: artoush.varshosaz@klgates.com

*Counsel for Highland Income Fund,*
*NexPoint Strategic Opportunities Fund,*
*Highland Global Allocation Fund, and*
*NexPoint Capital, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2021, I caused the foregoing document to be served via first class United States mail, postage prepaid and/or electronic email through the Court's CM/ECF system to the parties that consented to such service.

Dated:  March 3, 2021

*/s/ A. Lee Hogewood, III*
A. Lee Hogewood, III

Appx. 0327