# EXHIBIT 24

Appx. 0960

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 2 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 2 of 34 PageID 1010
Case: 21-10449 Document: 00515869234 Page: 1 Date Filed: 05/19/2021

Date Filed: 5/19/2021

**Case No. 21-10449**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

In re: Highland Capital Management, L.P.

     Debtor.

-----------------------------------------------

NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.,

     Appellants,

v.

Highland Capital Management, L.P.,

     Appellee.

## APPELLANTS' MOTION FOR STAY PENDING APPEAL

Direct Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Honorable Stacey G.C. Jernigan

Davor Rukavina, Esq.
Julian P. Vasek, Esq.
MUNSCH HARDT KOPF & HARR, P.C.
500 North Akard Street, Ste. 3800
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR APPELLANTS/MOVANTS

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 3 of 34
Case 3:21-cv-01169-N    Document 10-24    Filed 10/05/21    Page 3 of 34    PageID 1011
Case: 21-10449      Document: 00515869234      Page: 2      Date Filed: 05/19/2021

**Case No. 21-10449**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

In re:  Highland Capital Management, L.P.

      Debtor.

-------------------------------------------------

NexPoint Advisors, L.P., and Highland Capital Management Fund Advisors, L.P.,

      Appellants,

v.

Highland Capital Management, L.P.,

      Appellee.

### <u>CERTIFICATE OF INTERESTED PERSONS</u>

      The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

    1.     **APPELLANTS/MOVANT:**

        **NexPoint Advisors, L.P.**
           Owned by:
                The Dugaboy Investment Trust
                NexPoint Advisors GP, LLC
                    Owned by:
                        James Dondero

Appx. 0962

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 4 of 34
Case 3:21-cv-01169-N    Document 10-24    Filed 10/05/21    Page 4 of 34    PageID 1012
Case: 21-10449    Document: 00515869234    Page: 3    Date Filed: 05/19/2021

**Highland Capital Management Fund Advisors, L.P.**
  Owned by:
      Highland Capital Management Services, Inc.
      Strand Advisors XVI, Inc.
      Okada Family Revocable Trust

  **Represented by**:
      Davor Rukavina, Esq.
      Julian P. Vasek, Esq.
      MUNSCH HARDT KOPF & HARR, P.C.

2.    **RETAIL FUNDS MANAGED BY APPELLANTS**:

**NexPoint Capital, Inc.**

**Highland Income Fund**

**NexPoint Global Strategic Opportunities, Fund**

3.    **APPELLEE/RESPONDENT**:

**Highland Capital Management, L.P.**
  Owned by:
      Hunter Mountain Investment Trust
      The Dugaboy Investment Trust
      Mark and Pamela Okada Family Trust – Exempt Trust 2
      Mark and Pamela Okada – Exempt Descendants' Trust
      Mark Kiyoshi Okada
      Strand Advisors, Inc.

  **Represented by:**
      PACHULSKI STANG ZIEHL & JONES LLP
      Jeffrey N. Pomerantz, Esq.
      John Morris, Esq.
      HAYWARD PLLC
      Melissa S. Hayward, Esq.
      Zachery Annable, Esq.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 5 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 5 of 34   PageID 1013
Case: 21-10449    Document: 00515869234    Page: 4    Date Filed: 05/19/2021

**4.** **OTHER PARTIES INDIRECTLY AFFECTED BY APPEAL:**

**Official Committee of Unsecured Creditors**
        Members:
                Redeemer Committee of Highland Crusader Fund
                Meta-e Discovery
                UBS Securities LLC
                UBS AG London Branch
                Acis Capital Management, L.P.
                Acis Capital Management GP, LLC
                Josh Terry

**All creditors in Highland Capital Management, L.P. bankruptcy**

                /s/ Davor Rukavina_____
                Davor Rukavina, Esq.
                Counsel for the Appellants

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 6 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 6 of 34 PageID 1014
Case: 21-10449 Document: 00515869234 Page: 5 Date Filed: 05/19/2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... v

I.      SUMMARY ................................................................................... 1

II.     BACKGROUND ........................................................................... 3

        A.      THE DEBTOR AND THE CLOs ................................................ 3

        B.      THE CONFIRMATION ORDER AND PLAN .................................. 4

        C.      MOTION FOR STAY PENDING APPEAL PROCEEDINGS BELOW ............... 6

III.    ARGUMENTS AND AUTHORITIES ............................................ 7

        A.      STANDARD FOR A STAY PENDING APPEAL ............................. 7

        B.      THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS ............ 8

                i.      Legal Standard ................................................................... 8

                ii.     The Plan Violates *Pacific Lumber* ................................ 8

                iii.    The Plan Violates the Absolute Priority Rule ............... 16

                iv.     Conclusion ...................................................................... 18

        C.      MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT
                A STAY .......................................................................... 19

        D.      DEBTOR AND CREDITORS WILL NOT BE UNDULY
                PREJUDICED BY A STAY ................................................... 21

        E.      THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL ........... 22

        F.      SECURITY FOR STAY PENDING APPEAL ............................... 23

IV.     CONCLUSION .......................................................................... 24

Appx. 0965

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 7 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 7 of 34 PageID 1015
Case: 21-10449 Document: 00515869234 Page: 6 Date Filed: 05/19/2021

# TABLE OF AUTHORITIES

## Cases

*Arnold v. Garlock*, 278 F.3d 426 (5th Cir. 2001) ........................................8

*Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012)..........................................20

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*,
    526 U.S. 434 (1999)..............................................................................18

*Bank of. La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores
    of Tex., Inc.)*, 266 F.3d 388 (5th Cir. 2001)...................................11, 14

*Bank of New York Trust Co., N.A. v. Official Unsecured
    Creditors' Comm. (In re Pacific Lumber Co.)*,
    584 F.3d 229 (5th Cir. 2009) ......................................................*passim*

*Cooper v. U.S. Postal. Serv.*, 246 F.R.D. 415 (D. Conn. 2007) ...............................20

*Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.)*, 782 Fed. Appx. 339
    (5th Cir. 2019)......................................................................................23

*In re Blast Energy Services, Inc.*, 593 F.3d 418 (5th Cir. 2010) ............................19

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995) .........................9

*In re Edmonds*, 273 B.R. 527 (Bankr. E.D. Mich. 2000) ........................................17

*In re First S. Sav. Ass'n*, 820 F.2d 700 (5th Cir. 1987) .............................................8

*In re Introgen Therapeutics*, 429 B.R. 570 (Bankr. W.D. Tex. 2010) ....................17

*In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000)........................................5, 12

*In re W. Real Fund*, 922 F.2d 592 (10th Cir. 1990) ..................................................9

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988)....................................17

*Scott v. Schedler*, 826 F.3d 207 (5th Cir. 2016)........................................................13

*Tex. Democratic Party v. Abbott*, 961 F.2d 389 (5th Cir. 2020) ........................8, 18

*Weingarten Realty Investors v. Miller*, 661 F.3d 904 (5th Cir. 2011)................8, 19

**Appx. 0966**

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 8 of 34
Case 3:21-cv-01169-N    Document 10-24    Filed 10/05/21    Page 8 of 34    PageID 1016
Case: 21-10449    Document: 00515869234    Page: 7    Date Filed: 05/19/2021

**Statutes and Rules**

11 U.S.C. § 1126.................................................................................................16

11 U.S.C. § 1129.................................................................................................16

FED. R. BANKR. P. 8007 .................................................................................7, 22

Appx. 0967

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 9 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 9 of 34 PageID 1017
Case: 21-10449 Document: 00515869234 Page: 8 Date Filed: 05/19/2021

Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. (the "Movants"), the appellants in this direct bankruptcy appeal, file this their *Motion for Stay Pending Appeal* (the "Motion"), respectfully stating as follows:

## I.    SUMMARY[1]

The Movants respectfully request a stay of the Bankruptcy Court's Confirmation Order, by which it confirmed the Chapter 11 Plan of Highland Capital Management, L.P. (the "Debtor").

A stay is necessary to prevent irreparable harm by ensuring that this Appeal does not become equitably moot through the implementation of the Plan. A stay is also necessary because the Plan's injunctions prevent the Movants from exercising their contractual and statutory rights, post-confirmation, and from potentially asserting claims against various non-debtor parties, which claims the Plan releases, exculpates, and enjoins. If a stay is not entered, then the Debtor is likely to liquidate all of its holdings with judicial immunity by the time that the merits of this appeal are heard.

A stay is appropriate because the Plan violates this Court's precedent and the Bankruptcy Code. First, the Plan contains sweeping injunction, release, and exculpation provisions expressly forbidden by this Court in *Pacific Lumber*, which provisions permanently enjoin the Movants from exercising their lawful rights and

---

[1]    Capitalized terms used in this Summary are defined below.

Appx. 0968

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 10 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 10 of 34   PageID 1018
Case: 21-10449   Document: 00515869234   Page: 9   Date Filed: 05/19/2021

which impermissibly release claims that the Movants have against various non-debtors.  The Bankruptcy Court recognized as much, predicting that this Court would "extend the holding" of *Pacific Lumber*—something that this Court has yet to do, however.  Second, the Plan could not have been confirmed at all under the "cramdown" provisions of the Bankruptcy Code because equity interest holders retain certain interests even though unsecured creditors rejected the Plan and are not paid in full under the Plan.

A stay will not prejudice the Debtor or other creditors.  The Plan does not provide for a sale, nor for exit financing, nor for the issuance or new securities or investments in the Debtor.  Rather, the Plan simply provides for the Debtor to liquidate its assets over time, something that the Debtor is presently doing and can continue doing without a need for the Plan.

A stay will serve the public interests.  Thousands of innocent investors, whose investments (more than $1 billion) the Debtor manages, are enjoined from exercising their solemn rights for post-bankruptcy claims.  Potential claims they hold against the Debtor's management and non-debtors are simultaneously extinguished through the Plan's exculpation provisions.  The public interest cannot be served by permitting a Plan that clearly violates this Court's precedent to become effective, and the public interest cannot be served when these innocent investors are enjoined from exercising their contractual and statutory rights.

Appx. 0969

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 11 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 11 of 34 PageID 1019
Case: 21-10449 Document: 00515869234 Page: 10 Date Filed: 05/19/2021

## I.     __BACKGROUND__[2]

### A.    __THE DEBTOR AND THE CLOS__

The Debtor is a multibillion-dollar global investment adviser registered with the SEC, pursuant to the Investment Advisers Act of 1940.[3]  Under that Act, the Debtor owes strict fiduciary duties to the funds that it manages and to the investors whose investments it manages.[4]  Among other things, the Debtor manages more than $1 billion in investments in various collateralized loan obligations ("__CLOs__") pursuant to portfolio management agreements (the "__PMAs__") in exchange for various fees paid by the CLOs.[5]

The Movants are also registered investment advisors who manage and advise various publicly traded funds, including three such funds (the "__Funds__")[6] which collectively have invested approximately $140 million in the CLOs the Debtor manages.[7]  The Movants are also unsecured and administrative creditors

---

[2]     Contemporaneously with the filing of this Motion, the Movants are filing their *Appendix of Appellants*.  Citations to the appendix shall be notated as follows: Appx. #.

[3]     Appx. 6.

[4]     Appx. 340 (Tr. 179:8-15).

[5]     Appx. 350-51 (Tr. 189:3-190:12).

[6]     NexPoint Capital Inc., Highland Income Fund, and NexPoint Strategic Opportunities, Fund.  Appx. 508 (Tr. 52:20-25).

[7]     Appx. 509-11 (Tr. 53:1-55:5).

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 12 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 12 of 34   PageID 1020
Case: 21-10449      Document: 00515869234      Page: 11      Date Filed: 05/19/2021

against the Debtor.[8]  The Movants have standing to appeal the Confirmation Order and to seek a stay pending appeal, as confirmed by the Bankruptcy Court.[9]

Under at least three PMAs, the Funds may remove the Debtor as CLO manager because the Funds hold the requisite percentage of shares.  There are various other CLOs where the Funds do not hold enough shares but are still able to vote their shares along with other shareholders.  Thus, should the Debtor, as manager, act inappropriately, the Funds, and the Movants acting on their behalf, have the ability to protect themselves and their investors, absent the Plan.

**B.    THE CONFIRMATION ORDER AND PLAN**

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 16, 2019.[10]  On February 22, 2021, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") entered an order (the "Confirmation Order")[11] confirming the Debtor's Chapter 11 plan (the "Plan") over the objections of the Movants and various others.[12]

---

[8]      Appx. 777-95.

[9]      Appx. 733 (Tr. 20:15-18); Appx. 863 (Tr. 68:13-15).

[10]     Appx. 7.

[11]     Appx. 1.

[12]     Appx. 92.

4

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 13 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 13 of 34 PageID 1021
Case: 21-10449 Document: 00515869234 Page: 12 Date Filed: 05/19/2021

Because Class 8, the class of unsecured creditors, rejected the Plan and is not paid in full under the Plan,[13] the Bankruptcy Court confirmed the Plan under the cramdown provisions of the Bankruptcy Code, *see* 11 U.S.C. § 1129(b)(2)(B), including the critical "Absolute Priority Rule." This Rule is discussed in detail in section III.B.iii below.

The Plan contains various other provisions directly applicable to this appeal. First, the Plan assumes the PSAs.[14] The effect of assumption is that "the debtor must continue to perform . . . the debtor accepts both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505-06 (5th Cir. 2000). Second, the Plan releases and exculpates claims that the Movants and others have against numerous non-debtors, as discussed in detail in section III.B.ii below. Third, the Plan enjoins the Movants and others from exercising their rights and claims against the Debtor and numerous non-debtors, some of which claims are subject to a "gatekeeper" injunction where the Bankruptcy Court must first determine that a claim against a non-debtor is "colorable," as discussed in detail in section III.B.ii below.

The Movants timely filed their notice of appeal of the Confirmation Order.[15] On March 31, 2021, and after certification by the Bankruptcy Court,[16] the Movants

---

[13]  Appx. 6, ¶ 3 (Class 8 rejected Plan); Appx. 41 (Class 8 projected to receive 71%).

[14]  Appx. 69, 157-61.

[15]  Appx. 772.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 14 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 14 of 34   PageID 1022
Case: 21-10449   Document: 00515869234   Page: 13   Date Filed: 05/19/2021

filed their petition for leave to file a direct appeal of the Confirmation Order, asserting five (5) issues on appeal (only the first four (4) of which are relevant to this Motion).[17]   On May 4, 2021, this Court granted the Movants' petition for a direct appeal of the Confirmation Order.[18]

### C.   MOTION FOR STAY PENDING APPEAL PROCEEDINGS BELOW

While the Confirmation Order has been entered, that does not mean that the Plan is effective or operative.   Rather, as is common, the Plan contains various conditions precedent that must be met before the Plan can be declared "effective."[19]

On February 28, 2021, the Movants sought a stay of the Confirmation Order before the Bankruptcy Court.[20]   On March 19, 2021, the Bankruptcy Court orally denied said motion.[21]   The Bankruptcy Court followed its oral denial with two written orders.[22]

On April 1, 2021, the Movants sought a stay of the Confirmation Order before the United States District Court for the Northern District of Texas, Dallas

---

[16]      Appx. 775.

[17]      Appx. 885, 897-99.

[18]      Appx. 945.

[19]      Appx. 142.

[20]      Appx. 947-80.

[21]      Appx. 861-76 (Tr. 66:13 – 81:13).

[22]      Appx. 878-84.

Appx. 0973

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 15 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 15 of 34   PageID 1023
Case: 21-10449      Document: 00515869234      Page: 14      Date Filed: 05/19/2021

Division (the "District Court"), as that is where the appeal was then pending.[23]  On April 12, 2021, the District Court entered an order granting expedited consideration of said motion and ordering expedited briefing.[24]  As of the filing of this Motion, the District Court has yet to adjudicate the motion for stay pending appeal.

Because this Court now has jurisdiction over this appeal, the Movants now file this Motion and seek a stay of the Confirmation Order from this Court.

The Debtor has agreed to stay the effectiveness of the Plan through June 25, 2021.  Thus, the Plan has yet to become effective or be implemented.

## II.      ARGUMENTS AND AUTHORITIES

### A.      STANDARD FOR A STAY PENDING APPEAL

Because this Court has granted a direct appeal of the Confirmation Order, this Court is the appropriate court to consider a stay of the Confirmation Order pending appeal.  *See* FED. R. BANKR. P. 8007(b)(1).  The Movants have satisfied the requirement of first seeking a stay from the Bankruptcy Court, which denied said relief.  *See id.* at 8007(b)(2)(B).

In determining whether to grant a discretionary stay pending appeal, the Court considers the following criteria: (1) the likelihood that the movant will

---

[23]      Appx. 912-44.

[24]      Appx. 907-11.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 16 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 16 of 34 PageID 1024
Case: 21-10449 Document: 00515869234 Page: 15 Date Filed: 05/19/2021

prevail on the merits of the appeal; (2) whether the movant will suffer irreparable injury if the stay is denied; (3) whether other parties would suffer substantial harm if the stay is granted; and (4) whether the public interest will be served by granting the stay. *See In re First S. Sav. Ass'n*, 820 F.2d 700, 709 (5th Cir. 1987). "The first two factors are the most critical." *Tex. Democratic Party v. Abbott*, 961 F.2d 389, 397 (5th Cir. 2020). However, the four-element test does not apply "where there is a serious legal question involved and the balance of equities heavily favors a stay; in those situations, the movant only needs to present a substantial case on the merits." *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).

## B.    THERE IS A LIKELIHOOD OF SUCCESS ON THE MERITS

### i.    Legal Standard.

"[T]he appellant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Arnold v. Garlock*, 278 F.3d 426, 439 (5th Cir. 2001) (quotations omitted).

### ii.    The Plan Violates *Pacific Lumber*

In *Bank of New York Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009), this Court

Appx. 0975

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 17 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 17 of 34 PageID 1025
Case: 21-10449 Document: 00515869234 Page: 16 Date Filed: 05/19/2021

broadly foreclosed nonconsensual releases or exculpations of third party claims; *i.e.* a claim held by a non-debtor against a non-debtor. The *Pacific Lumber* plan proposed to exculpate the debtor's management and professionals for actions (or omissions) they may have taken during the Chapter 11 case. *See id*. at 251. The Court found this impermissible:

> this court has held Section 524(e) only releases the debtor, not co-liable third parties. These cases seem broadly to foreclose non-consensual non-debtor releases and permanent injunctions. . . the essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy. The fresh start § 524(e) provides to debtors is not intended to serve this purpose.

*Id*. at 252 (internal citations omitted).

Nor can a release of third party claims be effectuated through an injunction: "[s]ection 524 prohibits the discharge of debts of nondebtors. Accordingly, we must overturn a § 105 injunction if it effectively discharges a nondebtor." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995). The Court concluded that no such injunction could be imposed under a plan on a permanent basis:

> the stay may not be extended post-confirmation in the form of a permanent injunction that effectively relieves the nondebtor from its own liability to the creditor. Not only does such a permanent injunction improperly insulate nondebtors in violation of section 524(e), it does so without any countervailing justification of debtor protection.

*Id*. at 760 (*quoting In re W. Real Fund*, 922 F.2d 592, 601-02 (10th Cir. 1990)).

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 18 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 18 of 34 PageID 1026
Case: 21-10449 Document: 00515869234 Page: 17 Date Filed: 05/19/2021

Here, the Plan violates these dictates in three substantial ways: (i) it exculpates claims for negligence that may be held by the Movants and others against numerous non-debtor parties;[25] (ii) it enjoins the Movants and others from exercising their contractual rights after confirmation under contracts that are assumed;[26] and (iii) it subjects any claim that the Movants and others may have against the foregoing for anything other than negligence to a "gatekeeper injunction" where the Bankruptcy Court, reserving "exclusive jurisdiction," must first determine that a "colorable claim" exists.[27]

With respect to the Plan's exculpation provisions, "Exculpated Parties" non-debtor managed funds, employees, the Debtor's general partner, the Debtor's management and professionals, and the affiliates of the foregoing.[28] Subject to various limitations, the Plan provides that:

> no Exculpated Party will have or incur, and each Exculpated Party is hereby exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Petition Date in connection with or arising out of . . .[29]

On its face, these provisions directly and clearly violate *Pacific Lumber*. But these provisions are even more serious because they also apply to, and

---

[25]    Appx. 144 (C. Exculpation).

[26]    Appx. 147 (F. Injunction)

[27]    *Id.*

[28]    Appx. 106.

[29]    Appx. 144 (C. Exculpation).

Appx. 0977

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 19 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 19 of 34 PageID 1027
Case: 21-10449    Document: 00515869234    Page: 18    Date Filed: 05/19/2021

exculpate, potential *prospective* liability incurred after the confirmation of the Plan, because these provisions also apply to "the implementation of the Plan."[30] The "implementation of the Plan" will take between two to three years and involves the Debtor's management of more than $1 billion of other peoples' investments.[31]   This is unprecedented, that a federal court would immunize fiduciaries against future claims.  This also violates the fundamental premise of what it means to *exit* bankruptcy:

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval.  The firm also is without the protection of the bankruptcy court.  It may not come running to the bankruptcy judge every time something unpleasant happens.

*Bank of. La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001).

It is the equivalent of General Motors releasing the post-confirmation entity from liability for manufacturing defects for cars it sells after bankruptcy.  Nor is this concern an academic one.  As the Debtor's CEO testified at the confirmation hearing, the Debtor lost approximately $200 million in value during its bankruptcy case, at least $100 million of which the CEO blamed on the Debtor's prior (yet post-bankruptcy) manager.[32]

---

[30]    *Id.* (sub. iv).

[31]    Appx. 350 (Tr. 189:3-9).

[32]    Appx. 256-59 (Tr. 95:17-98:6); Appx. 361 (Tr. 200:16-19).

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 20 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 20 of 34   PageID 1028
Case: 21-10449      Document: 00515869234      Page: 19      Date Filed: 05/19/2021

Next, the Plan contains a sweeping, permanent injunction: "all Enjoined Parties[33] are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan."[34] Of immediate relevance and effect on the Movants, this means that the Movants are enjoined from advising or causing their clients, including the Funds, to remove the Debtor as the manager of the CLOs, even though the Debtor assumed the PMAs and even if the Debtor mismanages the CLOs.[35]

As with exculpations, *Pacific Lumber* broadly foreclosed non-consensual "permanent injunctions." *In re Pacific Lumber Co.*, 584 F.3d at 252-53. More technically, the assumption of the PMAs means that the Debtor is obligated to perform under them and all rights of the counterparty are preserved and may be enforced: "[w]here the debtor assumes an executory contract, it must assume the entire contract, cum onere – the debtor accepts both the obligations and the benefits of the executory contract." *In re Nat'l Gypsum Co.*, 208 F.3d at 505-06. The Debtor here found a clever way around this fundamental rule by simply obtaining an injunction that permanently enjoins and alters contract rights and obligations, in direct violation of the Bankruptcy Code.

---

[33]     The Movants are "Enjoined Parties."  Appx. 105.

[34]     Appx. 147.

[35]     Appx. 359 (Tr. 198:12-25).

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 21 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 21 of 34   PageID 1029
Case: 21-10449      Document: 00515869234      Page: 20      Date Filed: 05/19/2021

This injunction, prohibiting "any actions to interfere with the implementation or consummation of the Plan," is also both overbroad and vague. *See Scott v. Schedler*, 826 F.3d 207, 211-12 (5th Cir. 2016) ("an injunction is overly vague if it fails to satisfy the specificity requirements . . . and it is overbroad if it is not narrowly tailored to remedy the specific action"). The Movants should not be subjected to potential contempt actions when the Plan fails to define with any reasonable specificity what it means to "interfere" with the "implementation or consummation" of the Plan.

With respect to the "gatekeeper injunction," the Movants are included within the "Enjoined Parties" subject to that injunction, which injunction prohibits the Movants from taking various actions, including to sue any of the "Protected Parties."[36] The "Protected Parties" include the same entities that are exculpated as discussed above.[37] Like the exculpation provision, this injunction effectuates a non-consensual, non-debtor release prohibited by *Pacific Lumber* because the Movants are enjoined from suing the Protected Parties *even for* claims based on "bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence."[38] *See In re Pacific Lumber Co.*, 584 F.3d at 252-53.

---

[36]    Appx. 105 ("Enjoined Parties"); Appx. 110 ("Protected Parties"); Appx. 147 (F. Injunction).

[37]    Appx. 110.

[38]    Appx. 147-48.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 22 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 22 of 34   PageID 1030
Case: 21-10449    Document: 00515869234    Page: 21    Date Filed: 05/19/2021

This injunction is not saved by the fact that the Bankruptcy Court may grant relief from the injunction if it first determines that an Enjoined Party has a "colorable claim" against a "Protected Party."  Nothing in the Bankruptcy Code possibly permits the Bankruptcy Court to require a non-debtor to come to it and prove that it has a viable claim against another non-debtor before it can assert that claim, or else be in contempt of court.  And this, too, applies *prospectively* to actions the Debtor will take in the next two to three years during the "wind down of the business of the Debtor or Reorganized Debtor" and the "the administration of the Claimant Trust."[39]  This is unprecedented, it violates due process, it is a taking, and it is prohibited by *Pacific Lumber*.

The Bankruptcy Court also impermissibly reserved to itself the "sole and exclusive jurisdiction to determine whether a claim or cause of action is colorable."[40]  It is black-letter law that the Bankruptcy Court has no such jurisdiction between non-debtors today, and will certainly have no such jurisdiction in the future as the Plan is implemented.  *See In re Craig's Stores of Tex. Inc.*, 266 F.3d at 390 ("After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.").  And it is certainly

---

[39]    *Id.*

[40]    *Id.*

Appx. 0981

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 23 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 23 of 34 PageID 1031
Case: 21-10449 Document: 00515869234 Page: 22 Date Filed: 05/19/2021

black-letter law that the Bankruptcy Court cannot confer onto itself jurisdiction that it does not have.

The end result is that the Movants, and many others, are enjoined *permanently* from exercising their legal and contractual rights; that potential present and *prospective* claims they have against non-debtors are released and exculpated; and that they are required to prove a "colorable" claim for any present or *prospective* claim they may have against non-debtors before they may assert that claim, while the Debtor and its management, officers, and others are free to manage billions of dollars of innocent investors' funds, taking very large fees for themselves, effectively free from the fiduciary duties imposed on them by the federal securities laws. This is precisely what *Pacific Lumber* prohibits, and the wisdom of *Pacific Lumber's* prohibition is aptly proven by this case.

The Bankruptcy Court attempted to distinguish *Pacific Lumber*.[41] In fact, the Bankruptcy Court stated its belief that this Court would "extend the holding of *Pacific Lumber*" with respect to the proper scope of an exculpation provision.[42] But if the holdings and limitations of *Pacific Lumber* must be extended in order for the Plan's exculpation provision to be permissible, then the Movants have demonstrated a likelihood of success on the merits of this issue *per se*.

---

[41]     Appx. 744-56.

[42]     Appx. 865 (Tr. 70:10-24).

15

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 24 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 24 of 34 PageID 1032
Case: 21-10449 Document: 00515869234 Page: 23 Date Filed: 05/19/2021

### iii. The Plan Violates the Absolute Priority Rule.

Creditors vote by class under a Chapter 11 plan. *See* 11 U.S.C. § 1126(c). Class 8—unsecured creditors—rejected the plan.[43] As the Plan does not pay Class 8 in full[44] and Class 8 rejected the Plan, the Plan could only be confirmed if the Debtor satisfied the "Absolute Priority Rule." Under the Absolute Priority Rule, the holder of any junior interest—*e.g.*, an equity interest—cannot "receive or retain … any property" on account of its junior interest. 11 U.S.C. § 1129(b)(2)(B)(ii).

Here, the Plan violates the Absolute Priority Rule as a matter of law because the Plan gives the Debtor's limited partners—*i.e.*, junior interest holders— contingent interests in the "Claimant Trust" created under the Plan to pay creditors and, after they are paid in full, to pay equity holders.[45] There is no question that those contingent trust interests are "property" as admitted by the Debtor at trial: "These are contingent interests. They are property. No doubt they are property."[46] The Debtor's CEO also testified that the contingent interests are, in his belief, inchoate property interests which may have some value in the future.[47] As a matter of law, an interest in a trust, even one subject to a contingency that may never

---

[43]   Appx. 6. One of the Movants, NexPoint Advisors, L.P., is a partial assignee of four Class 8 Claims. Appx. 777-87.

[44]   Appx. 41.

[45]   Appx. 120.

[46]   Appx. 698 (242:19-20).

[47]   Appx. 339 (178:22-25).

Appx. 0983

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 25 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 25 of 34 PageID 1033
Case: 21-10449 Document: 00515869234 Page: 24 Date Filed: 05/19/2021

happen, is "property." *See In re Edmonds*, 273 B.R. 527, 529 (Bankr. E.D. Mich. 2000). The Plan therefore violates the Absolute Priority Rule because equity holders retain or receive "property" under the Plan.

The Debtor argued that these contingent interests may have no value and would only vest and be paid if unsecured creditors are paid in full, thus satisfying the Absolute Priority Rule.[48] But the United States Supreme Court has squarely rejected this argument:

> Respondents further argue that the absolute priority rule has no application in this case, where the property which the junior interest holders wish to retain has no value to the senior unsecured creditors. . . . We join with the overwhelming consensus of authority which has rejected this 'no value' theory. . . Whether the value is present or prospective, for dividends or only for purposes of control a retained equity interest is a property interest. . . And while the Code itself does not define what 'property' means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad. Property includes both tangible and intangible property.

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207-08 (1988) (internal quotations and citations omitted). Thus, it does not matter that the property may be prospective, intangible, or valueless.

The Bankruptcy Court relied on *In re Introgen Therapeutics*, 429 B.R. 570 (Bankr. W.D. Tex. 2010), for the proposition that, so long as the contingent interests are not paid unless and until all unsecured claims are paid in full, the

---

[48] Appx. 45.

Appx. 0984

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 26 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 26 of 34 PageID 1034
Case: 21-10449 Document: 00515869234 Page: 25 Date Filed: 05/19/2021

Absolute Priority Rule is satisfied. This opinion was wrongly decided and has never been adopted by this Court or any appellate court.

First, it directly contradicts the language of the Bankruptcy Code, which implicates the Absolute Priority Rule if *any* "property" is being retained or received. Second, the opinion looked to the present value of what was being retained, something directly foreclosed by the Supreme Court's opinion in *Norwest Bank Worthington* quoted above. Third, the opinion fails to take into account the Supreme Court's opinion in *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. Lasalle P'ship*, 526 U.S. 434 (1999). There the Supreme Court equated the exclusive opportunity to bid on new equity under a plan as itself "property" that was being granted or retained in violation of the Rule: "[t]his opportunity should, first of all, be treated as an item of property in its own right." *Id.* at 455. If an exclusive opportunity is "property" for purposes of the Absolute Priority Rule, then so is an "opportunity" to share in a future recovery, however remote.

**(iv)    Conclusion.**

At a minimum, the Movants have shown that a "serious legal question is involved and [that] the balance of the equities weighs heavily in favor of granting the stay." *Tex. Democratic Party v. Abbott*, 961 F.3d at 397. Permanent federal injunctions; a court exculpating someone of potential liability; a court requiring someone to come before it and prove that a claim is "colorable" before he may

Appx. 0985

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 27 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 27 of 34 PageID 1035
Case: 21-10449 Document: 00515869234 Page: 26 Date Filed: 05/19/2021

have access to the courts; violating the Absolute Priority Rule—all of these are "serious legal questions." And, given that the Bankruptcy Court ignored the dictates of *Pacific Lumber*, and that billions of dollars of investments from thousands of innocent investors are at stake, whose claims are released and who are enjoined from exercising their legal rights and remedies *after* bankruptcy, "the equities weighs heavily in favor of granting the stay."

Simply put, debtors and bankruptcy courts must not be permitted to use expediency to trample on legal rights, in the belief that appeals will become moot rendering appellate review unlikely. The Confirmation Order represents such clear errors of law and such a "substantial case on the merits" that the Court need not even consider the remaining factors governing a discretionary stay pending appeal under the authority of *Weingarten Realty Investors*, 661 F.3d at 910. Nevertheless, the Movants address such other factors below.

## C. MOVANTS WILL SUFFER IRREPARABLE INJURY WITHOUT A STAY

First, there is the threat of equitable mootness, which this Court applies to Chapter 11 confirmation orders to dismiss appeals because it may be effectively too late to "unscramble the eggs." *See, e.g., In re Blast Energy Services, Inc.*, 593 F.3d 418, 424 (5th Cir. 2010). Indeed, this Court has recognized potential issues with denying a stay pending appeal:

> Although the exigencies of the case appeared to demand prompt action, simply denying a stay seems to have been, and often will be,

Appx. 0986

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 28 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 28 of 34 PageID 1036
Case: 21-10449 Document: 00515869234 Page: 27 Date Filed: 05/19/2021

> too simplistic a response. A plan may be designed to take effect, as it
> was here, after a lapse of sufficient time to initiate appellate review. A
> supersedeas bond may be tailored to the scope of the appeal. An
> appeal may be expedited. As with all facets of bankruptcy practice,
> myriad possibilities exist. Thus, substantial legal issues can and ought
> to be preserved for review.

*Bank of New York Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re*

*Pacific Lumber Co.)*, 584 F.3d 229, 243 (5th Cir. 2009). This is all the more

important here where the order of the Article I bankruptcy court should be

reviewed on its merits by an Article III court.

Second, the various release, exculpation, and injunction provisions of the

Plan detailed above will lead to irreparable injury if the Movants are unable to

exercise their contractual rights or take other action to protect their interests and

those of the investments they manage. Being enjoined from doing what one

otherwise has the lawful right to do is irreparable injury as a matter of law. *C.f.*

*Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012); *Cooper v. U.S.*

*Postal. Serv.*, 246 F.R.D. 415, 418 (D. Conn. 2007).

The Debtor has testified that it intends to liquidate and wind down the CLOs

in approximately two years.[49] During that time, if the Movants dispute how the

Debtor is doing so, or believe they have claims against the Debtor for its conduct,

or wish to advise or cause their clients to take action against the Debtor on account

of the same, the Plan will prohibit them from doing so, and the Debtor and its

---

[49] Appx. 273 (line 5); Appx. 343 (line 5).

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 29 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 29 of 34   PageID 1037
Case: 21-10449      Document: 00515869234      Page: 28      Date Filed: 05/19/2021

management will be exculpated.  Absent a stay pending appeal, by the time that the Movants may ultimately prevail on their appeal, various rights will effectively have been lost for good.

### D.   DEBTOR AND CREDITORS WILL NOT BE UNDULY PREJUDICED BY A STAY

The Plan does not involve exit financing, a sale of the business, new investments, new money coming in, nor anything else that the Debtor does not already have to monetize its assets for the benefit of its creditors.[50]   As the Debtor's CEO confirmed at trial, "post-confirmation, you are basically going to continue managing the CLOs and funds and trying to monetize assets for creditors the same as you are today."[51]  He does not "need anything in the plan that [he] does [not] have today to keep managing" the "Funds and the CLOs."[52]

Thus, because the Plan does not give the Debtor anything that it lacks at present to continue monetizing its assets, managing the CLOs, and doing everything else it would under the Plan, the Debtor and its other creditors will not suffer any prejudice if a stay pending appeal is granted.  In this respect, the Court should take into account that 27 Class 8 creditors rejected the Plan, while only 17 accepted the Plan.[53]  It is the unsecured creditors who would be the only ones

---

[50]      Appx. 346 (185:3-188:5).

[51]      Appx. 349 (188:2-5).

[52]      *Id.* (188:23-189:2).

[53]      Appx. 6.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 30 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 30 of 34   PageID 1038
Case: 21-10449      Document: 00515869234      Page: 29      Date Filed: 05/19/2021

potentially prejudiced if the Plan is stayed, as that may delay their recoveries, but Class 8 overwhelmingly rejected the Plan.

## E.   THE PUBLIC INTEREST IS SERVED BY A STAY PENDING APPEAL

Because the Plan's exculpation and injunction provisions impermissibly infringe upon the contractual, legal, and due-process rights of parties in interest in the bankruptcy case, a stay pending appeal will serve the public interest. Thousands of innocent investors have invested in the CLOs or funds that the Debtor manages, totaling well over $1 billion, including $140 million for just the Funds that the Movants manage.  A stay will ensure that non-debtor parties can be held accountable for their post-petition and post-confirmation conduct.  The public has a strong interest, for example, in ensuring that the Debtor complies with federal securities laws.  But the Plan's exculpation provision and injunction threaten to substantially vitiate these laws and effectively relieve the Debtor from its obligations and duties (and potential liabilities) thereunder.

The public interest is also best served by requiring respect for judicial precedent, here *Pacific Lumber*.  While the Bankruptcy Court believed that this Court will revisit its *Pacific Lumber* holdings and will expand *Pacific Lumber*, at present *Pacific Lumber* is the law, and the Bankruptcy Court was bound by it.  This Court should not permit a Plan that clearly and directly violates *Pacific Lumber* to become effective before addressing the merits of this appeal.

Appx. 0989

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 31 of 34
Case 3:21-cv-01169-N    Document 10-24    Filed 10/05/21    Page 31 of 34    PageID 1039
Case: 21-10449      Document: 00515869234      Page: 30      Date Filed: 05/19/2021

**F.      SECURITY FOR STAY PENDING APPEAL**

The Court may, but need not, condition a stay pending appeal on a bond or other security being posted.  *See* FED. R. BANKR. P. 8007(c).  Because: (i) the Plan so clearly violates *Pacific Lumber;* (ii) the Plan so clearly violates the Absolute Priority Rule; (iii) there is the threat of equitable mootness; and (iv) the Debtor and creditors would not be harmed by a stay pending appeal, the Movants should not be required to post a bond as a condition to obtaining a stay.  Indeed, the Debtor argued below for a multi-hundred-million dollar bond, clearly designed *not* to protect other parties but to effectively *prevent* a stay pending appeal as no legitimate appellant should be required to post the entire amount of debt in a bankruptcy case as a condition of obtaining meaningful appellate relief.

The only conceivable harm pending appeal is from a delay in payments to certain creditors and minor added administrative expenses for having to file reports and pleadings with the Bankruptcy Court.  If the Plan is affirmed, then those creditors would not have use of those funds for a period of time.  Here, the Debtor believes that it will distribute approximately $60 million to Class 7 and Class 8 creditors within one year of the Plan going effective, which so far it has not.[54]  As unsecured creditors, these creditors would be entitled to interest at the federal rate of post-judgment interest.  *See Dropbox, Inc. v. Thru, Inc. (In re Thru, Inc.),* 782

---

[54]      Appx. 766.

Case 22-03062-sgj Doc 10-24 Filed 06/10/22   Entered 06/10/22 17:15:23   Page 32 of 34
Case 3:21-cv-01169-N   Document 10-24   Filed 10/05/21   Page 32 of 34   PageID 1040
Case: 21-10449   Document: 00515869234   Page: 31   Date Filed: 05/19/2021

Fed. Appx. 339, 341 (5th Cir. 2019).  That rate is presently less than 1% and is unlikely to rise past that amount during the period of any stay.  Thus, the interest that any creditor may be able to claim for any delay in payment is less than 1%, or less than $600,000.00.  With respect to increased administrative costs for having to file reports and pleadings with the Bankruptcy Court, the Movants estimate that it cannot reasonably cost the Debtor more than $150,000.00 per month to have to continue filing reports and pleadings with the Bankruptcy Court that it would no longer have to do under its Plan.

Assuming this Court resolves this appeal within twelve months, the Movants therefore submit that a bond or security of no more than $2.4 million is sufficient to protect the Debtor and its estate from any harm resulting from the delay in the effectiveness of the Plan.

## IV. <u>CONCLUSION</u>

WHEREFORE, premises considered, the Movants request that the Court enter an Order: (i) staying the effectiveness of the Confirmation Order pending appeal; and (ii) granting such other relief as is just and proper.

Appx. 0991

Case 22-03062-sgj Doc 10-24 Filed 06/10/22 Entered 06/10/22 17:15:23 Page 33 of 34
Case 3:21-cv-01169-N Document 10-24 Filed 10/05/21 Page 33 of 34 PageID 1041
Case: 21-10449 Document: 00515869234 Page: 32 Date Filed: 05/19/2021

RESPECTFULLY SUBMITTED this the 19th day of May, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Julian P. Vasek, Esq.
    500 N. Akard St., Ste. 3800
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    drukavina@munsch.com
    jvasek@munsch.com

**COUNSEL FOR HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., AND NEXPOINT ADVISORS, L.P.**

Appx. 0992

Case 22-03062-sgj Doc 10-24 Filed 06/10/22    Entered 06/10/22 17:15:23    Page 34 of 34
Case 3:21-cv-01169-N    Document 10-24    Filed 10/05/21    Page 34 of 34    PageID 1042
Case: 21-10449    Document: 00515869234    Page: 33    Date Filed: 05/19/2021

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that he discussed the relief requested herein with Jeff Pomerantz, Esq., counsel of record for the Debtor, who informed the undersigned that the Debtor opposes said relief.

/s/ Davor Rukavina
Davor Rukavina

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Petition complies with Rule 27(d)(2) because it contains 5,176 words, excepting those portions that may be excepted under Rule 32(f).

/s/ Davor Rukavina
Davor Rukavina

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 19th day of May, 2021, true and correct copies of this document, with any exhibits attached thereto, were served on the recipients listed below via email.

Jeffrey N Pomerantz
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd, 13th Floor
Los Angeles, CA 90067
Email: jpomerantz@pszjlaw.com

John A Morris
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017-2024
Email: jmorris@pszjlaw.com

/s/ Davor Rukavina
Davor Rukavina

Appx. 0993